## EX PARTE HOMER HARRISON.

No. 19945. Delivered December 7, 1938.

The opinion states the case.

*Bean, Evans & Bean,* of Lubbock, for appellant.

*Bradley & Wilson,* City Attorneys, of Lubbock, *H. P. Kucera,* City Attorney, of Dallas, *R. R. Lewis,* City Attorney, and *George D. Neal,* Assistant City Attorney, both of Houston, *W. D. Girand, Jr.,* and *W. D. Benson, Jr.,* of Lubbock, amici curiae.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—Relator was convicted in the corporation court of the City of Lubbock for parking his automobile in a meter parking space without depositing a nickel in the meter. After being committed to jail he applied to the district judge of Lubbock County for a writ of habeas corpus. The writ was granted, a hearing was had, and he was again committed to the city jail. Hence this appeal.

Relator contends that the parking meter ordinance of the City of Lubbock is invalid in that it imposes a fee for the use of the streets and "constitutes a violation of the city's contractual authority" over its streets.

Under the terms of the ordinance, the city was given authority to purchase parking meters to be placed by each zone in the city. No person is permitted to park his automobile in the designated areas without first depositing a five-cent coin in

the meter. The time limit for the occupancy of the places set apart is two hours. Section 18 of the ordinance reads as follows:

"That it shall be unlawful and an offense for any person to deposit or cause to be deposited in the parking meter within any of the parking meter zones as herein established a five cent coin of the United States of America for the purpose of extending the parking time of the vehicle occupying said parking space beyond the period of time fixed by this ordinance as the parking limit for the parking meter zone within which said parking meter is located."

Section 19 provides:

"That it shall be unlawful and an offense for any person, firm or corporation to allow, permit or suffer any vehicle registered in his, her, their or its name to be parked overtime, for a longer period of time continuously in said parking space than the parking limit provided by this ordinance for the parking meter zone within which said vehicle is so parked."

Section 25 is in language as follows:

"The five cent coins required to be deposited in the parking meters as provided herein are hereby levied as a police regulation, supervision and inspection fee to cover the cost of inspection, supervision and regulation involved in the installation, operation, upkeep and maintenance and the use of the parking space and parking meters described herein, and involved in checking up and regulating the parking of vehicles in the parking meter zone created hereby."

Further, it is provided in the ordinance that the money collected from the use of the meters shall be deposited to the credit of the city in the "Parking Meter Fund."

The City of Lubbock is operating under the provisions of Article 11, Section 5, of the Constitution of Texas, giving cities of more than five thousand inhabitants the right to adopt charters subject to such limitations as may be prescribed by the Legislature, and the right to levy, assess, and collect such taxes as may be authorized by law or their charters. Under the terms of Article 1175, Revised Civil Statutes, home rule cities are given "exclusive dominion, control, and jurisdiction in, over and under the public streets, avenues, alleys, highways and boulevards and public grounds" of such cities. Also the statute gives to such cities the right "to license, operate and control the operation of all character of vehicles using the public streets, including motorcycles, automobiles or like vehicles." The ordi-

nance was within the general charter powers of the city and the provisions of Article 1175, supra. The reason for its enactment is shown in the preamble, which reads as follows:

"Whereas, because of the crowded and congested condition of certain streets in certain sections of the city of Lubbock, the free moving of traffic in the downtown business area is congested and impeded; and,

"Whereas, previous attempts to regulate the parking of vehicles in the aforesaid area have not been as successful as is desirable for the safety and welfare of the public, and because of the small number of traffic policemen available therefor, and because of the size of the aforesaid area; and,

"Whereas, because numerous operators of motor vehicles, taking advantage of the above named situation by parking for unreasonable long periods of time in close proximity to other vehicles so parked on the most congested parts of the City's busiest streets, tends to further impede traffic and in addition thereto is unfair to business interests in such area and to motorists, and constitutes a danger to the life, limb and property of motorists and pedestrians; and,

"Whereas, such traffic conditions require limited parking in certain areas of the City of Lubbock, and enforcement of such limitations through the present means and methods, is expensive, inadequate and unsatisfactory; and,

"Whereas, it is advisable to employ some mechanical assistance in the enforcement of said parking limitation, and in the opinion of the City Commission, the most satisfactory way by which the above conditions may be remedied is by the designation of individual parking spaces in said area, and by providing for the use of the mechanical parking time indicators or meters in conjunction therewith, by restricting parking in said area to reasonable intervals of time, and by compelling the operators of vehicles who enjoy the use of the parking spaces so designated to pay a portion of the cost of the establishment and maintenance of the same, and for the purpose of regulating and controlling the same; * * * ."

The primary right of the citizen to the use of the streets for the purpose of travel thereon does not carry with it the right to "store his vehicle in the street for his business convenience." Harper v. City of Wichita Falls, 105 S. W. (2d) 743. While owners and nonowners of abutting property have the right to the use of the street for travel thereon and also the right of ingress and egress to and from property abutting on the street for loading and unloading passengers and merchandise on and

from vehicles used for transportation purposes, there is no doubt of the power of the city to regulate the privilege of parking in the interest of the public safety and good order. Ex parte Duncan, 65 Pac. (2d) 1015; State ex rel. Harkow v. McCarthy, 171 So. 314. From the case last cited we quote:

"From a constitutional standpoint, there is no doubt of the power of a municipality to regulate by ordinance traffic on its streets when reasonably necessary for public safety and good order, and to reasonably limit the parking time of motor vehicles using streets in congested areas. Ordinances have been upheld limiting such parking period to such time only as might be necessary to take on and let off passengers and baggage, and ordinances have also been upheld which entirely excluded motor vehicles from the use of certain streets, parks, and boulevards. The individual's ordinary right as a member of the public to the free use of a city's streets in the normal pursuit of his private business or personal pleasure must sometimes yield to the paramount rights and necessities of the general public. This right of the individual can not be taken from him, but it is subject to regulation in the interest of the public good."

The power to regulate parking implies "the power to exact a fee of sufficient amount to cover the expenses of maintaining the regulation." The "regulative measure is not invalidated because incidentally, the city's receipts of moneys are increased." The City of Buffalo v. Stevenson, 100 N. E. 798. The parking fee charged is not a tax, but is a license fee "properly chargeable for regulatory purposes under the police power of the city." Harper v. City of Wichita Falls, supra.

The parking meter ordinances which were upheld in Harper v. City of Wichita Falls, supra, Ex parte Duncan, supra, and State ex rel. Harkow v. McCarthy, supra, were substantially the same as the one now before us. In those cases it was held that the ordinances involved were reasonable police traffic regulations and not designed as tax-raising measures.

In support of his contention that the ordinance "constitutes a violation of the city's contractual authority" over its streets relator cites City of Birmingham v. Hood-McPherson Realty Company, 172 So. 114. In that case the owner of property abutting on a public street brought suit to enjoin the enforcement of a parking meter ordinance of the City of Birmingham. It was shown that the city's rights to the streets were derived through an original deed of dedication from the Elyton Land Company to the mayor and aldermen of Birmingham with these

provisions: "To have and to hold the above described and dedicated streets, avenues and alleys as aforesaid with appurtenances to the said Mayor and Aldermen of Birmingham to be kept by said 'Mayor and Aldermen of Birmingham' for the benefit and use of the public and it is expressly stipulated that said streets, avenues and alleys shall not be used for any private or individual purposes except with the consent of the 'Elyton Land Company.' The intention of this deed is to confirm the dedication heretofore made by the 'Elyton Land Company' to the 'Mayor and Aldermen of Birmingham' of the said streets, alleys and avenues, (with the exception aforesaid) to be kept by said 'Mayor and Aldermen of Birmingham' as the streets, avenues and alleys of the city and used alone as such for the benefit of the public and the said 'Mayor and Aldermen of Birmingham' accept the trust as intended and agree to carry out the trust according to the above intent and purpose and not otherwise. It is further understood that this conveyance shall not be construed to convey said streets, alleys and avenues, except to be kept and used alone as such for the benefit of the public, and for no other use and benefit whatever without the consent of the said 'Elyton Land Company.' " The court reached the conclusion that the ordinance "was an unauthorized abandonment of the terms of the Elyton Land Company's deed of dedication; that its execution deprives complainant of its property without due process; and that its administration was and is an unauthorized exercise of the taxing power."

What we have heretofore said disposes of the contention that the ordinance of the City of Lubbock is an unauthorized exercise of the taxing power. Having reached the conclusion that the fee charged is not a tax but a license fee, it follows that we are not in accord with the announcement of the Supreme Court of Alabama to the effect that a parking meter ordinance providing for reasonable fees for parking automobiles in congested areas transcends constitutional limitations.

The absence of any restrictions in the deed of dedication of the public streets of the City of Lubbock distinguishes the Alabama case from the present case in so far as the Supreme Court of Alabama held that the enforcement of the ordinance there under consideration constituted an unauthorized abandonment of the terms of the deed of dedication. It is the general rule that the dedicator may impose such restrictions as he may see fit in making a dedication of his property. Regardless of the rule in Alabama, it is the announcement of the decisions in this State that the restrictions must not be repugnant to the

dedication or against public policy. Roaring Springs Townsite Company v. Paducah Telephone Company, 212 S. W. 147. We quote from West Texas Utilities Company v. City of Spur, 38 Fed. (2d) 466, as follows:

"The claim of the appellant based upon the above set out provision, whereby the townsite corporation undertook to reserve to itself and its assigns the right to make specified uses of dedicated streets and alleys, is not sustainable. Such a restriction or reservation is void, because it is repugnant to the dedication and is violative of the public policy evidenced by statutes conferring on governing bodies of municipalities power to control such uses of streets and alleys as are referred to in the provision in question."

In Harper v. City of Wichita Falls, supra, it was said: "We believe the broad powers vested in the City of Wichita Falls, as a home-rule city, by our Constitution and Article 1175, Rev. Civ. Statutes, and its charter, furnish a complete answer to the contention so made; regardless of any general rule of decisions of a contrary import applicable to municipalities not vested with such comprehensive powers." This statement was made in answer to the contention of Harper that the holding in the case of City of Birmingham v. Hood-McPherson, supra, militated against the enforcement of the parking meter ordinance of the City of Wichita Falls. As already pointed out, Lubbock is a home rule city and the enactment of the ordinance was within its general charter powers. We are unable to reach the conclusion that the ordinance violates "the city's contractual authority" over its streets.

In conclusion we quote the l a n g u a g e of Mr. Justice McREYNOLDS in Frost and Frost Trucking Company v. R. R. Commission of California, 70 L. Ed. 1101, as follows:

"The States are now struggling with new and enormously difficult problems incident to the growth of automobile traffic, and we should carefully refrain from interference unless and until there is some real, direct and material infraction of rights guaranteed by the Federal Constitution."

The judgment is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.