GILSEY BUILDINGS, INC., Plaintiff, *v.* INCORPORATED VILLAGE OF GREAT NECK PLAZA, Defendant.

Supreme Court, Trial Term, Nassau County, March 31, 1939.

*McKnight, Neisley & McKnight* [*John R. Neisley* of counsel], for the plaintiff.

*Irwin R. Browner*, for the defendant.

FROESSEL, J. The question to be determined in this action for an injunction is the constitutionality of a so-called parking meter ordinance in so far as it affects plaintiff as an abutting owner. Plaintiff owns two buildings in the defendant village, one fronting 218 feet on the east side of Middle Neck road, the other fronting 100 feet on the west side of said road, each of which buildings consists of stores on the ground floor and offices and apartments on the second floor.

The defendant is a municipal corporation organized under the Village Law of this State, and is situate on a peninsula known as Great Neck, and is surrounded by eight other villages. Middle Neck road is the main arterial highway passing through the central portion of the peninsula. It is the main road of the defendant village, and nearly the entire business section is concentrated there.

On July 15, 1938, the defendant adopted an ordinance to establish parking meter zones, two of which include the portion of Middle Neck road on which plaintiff's buildings front. Said ordinance provides as follows:

"ORDINANCE No. 39

"PARKING METERS

" At a regular meeting of the Board of Trustees of the Village of Great Neck Plaza, held at the Office of the Village, in said Village, on the 15th day of July, 1938, it was

" *Resolved* because of traffic conditions resulting from the parking of motor vehicles upon some of the highways in the business district of the Village, that the following be and the same is hereby ordained, enacted and adopted as an ordinance of the Incorporated Village of Great Neck Plaza to take effect immediately:

" Section 1.  Parking Meter Zones: The following zones in the Village of Great Neck Plaza, to be known as parking meter zones, are hereby established:

" 1. The westerly side of Middle Neck Road from the northerly side of Cutter Mill Road to the southerly side of Cedar Drive.

" 2. The easterly side of Middle Neck Road from the northerly side of North Station Plaza to the southerly line of the private driveway entering into the premises known as No. 117 Middle Neck Road.

" 3. North Station Plaza from the easterly side of Middle Neck Road to the westerly side of Third Street.

" Section 2.  Installation of Parking Meters: In every parking meter zone, one parking meter shall be installed on the curb facing each space designated by lines painted on the surface of the street as a parking place for one vehicle.  Suitable signs indicating the parking restrictions and regulations applicable in parking meter zones shall be conspicuously posted therein.

" Section 3.  Operation of Parking Meters: Parking a vehicle within any parking meter zone for more than 60 minutes between the hours of 7 A. M. and 7 P. M. is prohibited.  Parking a vehicle in such zones for 60 minutes or less between said hours shall be permitted only upon the payment of five cents, by depositing a United States five cent coin in the parking meter facing the space occupied by such vehicle and by setting the time device upon such meter in operation.  The fact that the time device upon any meter is not in operation shall be presumptive evidence that the person who parked the vehicle then found standing in the space regulated by such meter failed to deposit a five-cent coin therein; and the mechanical registration by such meter of the lapse of more than 60 minutes shall be presumptive evidence of overtime parking.

" Section 4.  Penalties: Any person violating any provision of this ordinance shall be guilty of disorderly conduct and shall be punishable by a fine not exceeding $25.00 or imprisonment for five (5) days, or by both such fine and such imprisonment for each offense and shall be a disorderly person.

" Section 5. All ordinances or parts of ordinances in conflict with the provisions of this ordinance are hereby repealed. This ordinance shall take effect immediately."

The adoption of this ordinance followed the enactment by the Legislature of chapter 502 of the Laws of 1937, which amended section 54 of the Vehicle and Traffic Law by adding thereto the following provision: " Notwithstanding the provisions of this section the legislative body of a city or village except a city having a population of one million or more may by ordinance limit or prohibit parking in the city or village streets provided suitable signs are conspicuously posted in the streets where such restrictions apply and such legislative body may provide by ordinance for the installation, operation, maintenance, policing and supervision of parking meters and fix and require the payment of a fee for the privilege of parking where such meters are in operation."

At the trial plaintiff conceded " that the Board of Trustees of the defendant Village acted in good faith in enacting the ordinance in question and in a *bona fide* attempt to remedy a traffic situation or evil which they felt to exist in the Village." Moreover, plaintiff does not question the constitutionality of the said ordinance, nor of the foregoing enabling act of the Legislature, as between the village and the State on the one hand, and the general public on the other. It does maintain, however, before any action has been taken under the ordinance, that the installation and maintenance of parking meters in front of plaintiff's premises will constitute an illegal interference with its easement of access, in violation of section 6 of article 1 of the State Constitution.

This precise question does not appear to have been passed upon by any of the courts of this State, though the evidence before me shows that five of our municipalities have adopted parking meter ordinances. Plaintiff's counsel, in his memorandum, asserts that the right of the abutting property owner to free access on the highway is based on the old common-law rule that " No one can make a stable-yard of the King's highway," declared by Lord ELLEN-BOROUGH in *Rex* v. *Cross* (3 Camp. 224) more than a century and a quarter ago. It might be observed in passing, however, that the words " no one " make it clear that this rule applies to an abutting owner as well as to members of the public generally, and, as a matter of fact, the prosecution in that very case relied upon *Rex* v. *Russell* (6 East, 427), where the rule was applied to an abutting owner, a waggoner.

The controversy surrounding the rights of an abutter has been aptly commented upon in *Sauer* v. *City of New York* (206 U. S. 536, affg. 180 N. Y. 27) in the following language (p. 548): " The

right of an owner of land abutting on public highways has been a fruitful source of litigation in the courts of all the States, and the decisions have been conflicting, and often in the same State irreconcilable in principle. The courts have modified or overruled their own decisions, and each State has in the end fixed, and limited, by legislation or judicial decision, the rights of abutting owners in accordance with its own view of the law and public policy." But in that very case, where damages were denied plaintiff, an abutter, in connection with the erection of a viaduct in the street, the court said (at pp. 547, 548): " It is clear that under the law of New York an owner of land abutting on the street has easements of access, light and air as against the erection of an elevated roadway by or for a private corporation for its own exclusive purposes, but that he has no such easements as against the public use of the streets or any structures which may be erected upon the street to subserve and promote that public use."

In *Matter of Grade Crossing Commissioners* (201 N. Y. 32), where the elevation of the grade of a street was involved, our own Court of Appeals said this about the abutting owner (at p. 37): " The learned Appellate Division appear to have entertained the view that the impairment of the owner's access to his premises was the taking of an easement. It may be conceded that in the elevated railroad cases the right of access has been treated as an easement coupled with that of light and air, for which a recovery may be had at common law. But the right of access or ingress and egress of abutting owners to and from a public street, standing alone, has always at common law been considered *damnum absque injuria*, and consequently no action would lie for the impairment of the right. No elevated railroad has been constructed or operated in front of the respondents' premises. There has been no impairment of their light and air. The approach to the railroad crossing was constructed by the grade crossing commissioners for the benefit of the traveling public through the highway, in the exercise of governmental powers, and did not directly encroach upon the private property of the respondents, although the structure may have impaired, to some extent, their access to their premises, from which damages resulted; still, it was not the taking of property within the meaning of the Constitution." (Cases cited.)

In the comparatively recent case of *Jones Beach Boulevard Estate, Inc.*, v. *Moses* (268 N. Y. 362, 368, 369), where an ordinance forbidding the complete turn, the " U " turn and the left turn, except under special conditions, was under consideration, the court had this to say about the enforcement of the ordinance as against an abutting owner: " The plaintiff also contends that as an abutter

it has an easement of access and the ordinance is an unreasonable restriction on this right. The rights of an abutter are subject to the right of the State to regulate and control the public highways for the benefit of the traveling public. [Cases cited.] Although the abutting owner may be inconvenienced by a regulation, if it is reasonably adapted to benefit the traveling public he has no remedy unless given one by some express statute."

In *Frost Trucking Co.* v. *Railroad Commission of California* (271 U. S. 583), Mr. Justice McREYNOLDS, in his dissenting opinion, uttered a word of caution as to interference, on constitutional grounds, with problems of the type now before us, in the following observation: " The States are now struggling with new and enormously difficult problems incident to the growth of automobile traffic, and we should carefully refrain from interference unless and until there is some real, direct and material infraction of rights guaranteed by the Federal Constitution " (p. 603).

Thus, without further reference to any of the numerous authorities upon the subject, it appears to be well settled in this State that whatever right of access an abutter has, is in any event subordinate to the rights of the public at large and subject to reasonable regulation and control by the State. This " control " by the Legislature, as the representative of the State, has been exercised in many ways, both directly and by delegation of its power, of which *sections 86 and 90 of the Vehicle and Traffic Law and subdivisions 40–46 of section 89 of the Village Law,* are pertinent illustrations, as is also the enabling act hereinbefore referred to.

In the instant case I cannot see how the adoption of the ordinance in question, as authorized by the enabling act of the Legislature, constitutes an illegal and unconstitutional interference with plaintiff's right as an abutter. The ordinance was adopted " because of traffic conditions resulting from the parking of motor vehicles upon some of the highways in the business district of the village; " and its primary purpose is said to be to aid the public authorities, without costly expense entailed in the employment of additional policemen, to time the public in its parking; in short, to prevent overtime parking, and thus create a greater movement of traffic. The power of appropriate public authority over streets is not confined to their use for the sole purpose of travel, but they may be used for many other purposes required by the public convenience. (3 Dillon on Municipal Corporations [5th ed.], § 1154; *Perlmutter* v. *Greene,* 259 N. Y. 327; *Lyman* v. *Village of Potsdam,* 228 id. 398.) That the use here is a public one is in fact conceded in paragraph 6 of the complaint, and this distinguishes the case at bar from those where the interference was for a " private appropriation or use,"

such as *Bradley* v. *Degnon Contracting Co.* (224 N. Y. 60), or the so-called elevated railroad and kindred cases.

Moreover, the ordinance is reasonable. It forbids parking for more than one hour, precisely as the former ordinance, and that period is not claimed to be unreasonable. In this respect the present case is distinguishable from *Decker* v. *Goddard* (233 App. Div. 139), cited by plaintiff, where, in a controversy between private individuals, an ordinance granting the privilege of storing an automobile for six hours in front of a private residence was properly declared invalid because unreasonable, and not " expressly " authorized by the Legislature. Whether the one hour permitted under the ordinance here is timed by a policeman or a mechanical instrument is immaterial. If plaintiff may enjoin the defendant from permitting parking for one hour in front of its premises because the time is measured by a parking meter, then parking for a like period may be forbidden when timed by a policeman. And if plaintiff may do this because it wishes absolutely free and unobstructed access to and from the highway at all times, so can its neighbor, and its neighbor's neighbor, and thus as each abutting owner claimed the enforcement of this " right," even reasonable parking in cities and villages could be forbidden everywhere by private individuals, a result not to be contemplated. When and where parking may be banned altogether is still the exclusive function of the State, or the political subdivision to which it may delegate that power.

So far as plaintiff's right to " park " in front of its own premises is concerned, it is in no more favorable situation than any other member of the public at large. " The plaintiff, once upon the highway, is treated no differently than is any other member of the traveling public." (*Jones Beach Boulevard Estate, Inc.*, v. *Moses, supra; Rex* v. *Russell, supra.*) Inasmuch, however, as " parking " is defined in the Vehicle and Traffic Law, section 2, subdivision 20, as " the stopping of a motor vehicle or motor cycle upon any public highway and leaving such motor vehicle or motor cycle unattended by a person capable of operating it, for a period longer than necessary to load or unload passengers or freight," this definition must be read into the ordinance in question, and the ordinance interpreted and enforced accordingly. Plaintiff, therefore, as well as its tenants and others doing business with them, will thus be permitted to load or unload passengers or freight · abutting its premises without payment of the parking meter fee.

The language of Judge FINCH, speaking for a unanimous court in *Jones Beach Boulevard Estate, Inc.*, v. *Moses* (*supra*), is particularly applicable to the present situation: " A regulation or ordinance adopted to speed up traffic and eliminate danger is reasonable.

In *Commissioners of Palisades Interstate Park* v. *Lent* (240 N. Y. 1, at p. 8) this court, in sustaining a regulation limiting to certain specified routes cars operated for hire, said: ' What is reasonable is in large part tested by what is ordinary usage and common experience and in these days when, as we all know, very exact rules are adopted to govern motor traffic in congested centers, plaintiff's regulations seem a quite moderate exercise of power. The " one way street " and the " no left turn " have prepared us to accept the restrictions of which defendant complains as quite reasonable and in accordance with common experience. (*Robbins* v. *U. S.*, 284 Fed. Rep. 39.) ' It is obvious that it cannot be said that this ordinance ' passes the bounds of reason and assumes the character of a merely arbitrary fiat.' (*Town of Islip* v. *Summers C. & L. Co.*, 257 N. Y. 167, 169.) It is uniform in its application." In that case, an ordinance, which in effect forbade plaintiff from crossing the highway in front of its premises without first traveling a distance of ten miles, was held reasonable.

Nor does the fact that a small fee is charged for parking, in aid of its regulation, render the ordinance void. Analogous illustrations are manifold among the authorities; reference to two will suffice: " The power to regulate the use of the streets is a delegation of the police power of the State government and whatever reasonably tends to make regulation effective is a proper exercise of that power. It justifies the charge of a fee and the imposition of the penalty, and the regulative measure is not invalidated because, incidentally, the city's receipts of moneys are increased. The distinction between the taxing power and the police power will be found in the purpose for which the particular power is exercised." (*City of Buffalo* v. *Stevenson*, 207 N. Y. 258, 263.) (See *Town of Oyster Bay* v. *Moses*, 248 App. Div. 598; affd., 273 N. Y. 631.)

Looking now beyond this State, research discloses that at least six other jurisdictions have had occasion to pass upon parking meter ordinances.

In *State ex rel. Harkow* v. *McCarthy* (126 Fla. 433; 171 So. 314), decided December 10, 1936, where the validity of a parking meter ordinance was sustained, it was held (at p. 436): " From a constitutional standpoint, there is no doubt of the power of a municipality to regulate by ordinance traffic on its streets when reasonably necessary for public safety and good order, and to reasonably limit the parking time of motor vehicles using streets in congested areas." In that case the question arose in a habeas corpus proceeding, the relator contending that the ordinance, with the violation of which he was charged, was invalid.

The next case is *City of Birmingham* v. *Hood-McPherson Realty Co.* (233 Ala. 352; 172 So. 114), decided January 14, 1937. There

the suit was for an injunction to abate a nuisance resulting in injury to abutting property owners, and the court held that the parking meter ordinance was invalid. It appeared in that case that the city derived its title in the public streets through a deed containing a specific stipulation as to the use of the streets in question. The court concluded its opinion as follows (at p. 362): "We hold that the ordinance enacted and sought to be enforced was an unauthorized abandonment of the terms of the Elyton Land Company's deed of dedication; that its execution deprives complainant of its property without due process; and that its administration was and is an unauthorized exercise of the taxing power." This is the only case holding a so-called parking meter ordinance invalid, and the reasons given in the opinion are clearly inapplicable to the case at bar.

On March 9, 1937, the Supreme Court of Oklahoma decided *Matter of Duncan* (179 Okla. 355; 65 P. [2d] 1015). There Duncan was convicted and fined for non-compliance with the parking meter ordinance adopted by Oklahoma City, and he attacked its validity. The court held the ordinance valid, and the foregoing Alabama case inapplicable.

The Senate and House of Representatives of the State of Massachusetts requested an opinion of the justices of the Supreme Judicial Court relative to the constitutionality of a proposed statute relating to installation of parking meters by cities and towns, and on April 15, 1937, the said justices rendered their opinion, reported in *Matter of Opinion of Justices* (—— Mass. ——; 8 N. E. [2d] 179, 183). With their conclusion I am wholly in accord: "The conclusion is that within the limits of public travel, the General Court may regulate parking and may do so by a fee system intended to hasten the departure of parked vehicles and to help defray the cost of installation and of supervision. It is conceivable that under the proposed statute ordinances and by-laws may be drawn which would not by their enforcement violate constitutional rights. It is also conceivable that ordinances and by-laws may be drawn which would violate constitutional rights and underlying conceptions of public travel on public highways. Whether the lawful use of parking meters under the act would be confined within the lawful limits of travel cannot be known until ordinances and by-laws are drawn and applied to particular situations on the highways."

In *Harper* v. *City of Wichita Falls* ([Tex. Civ. App.] 105 S. W. [2d] 743), decided April 23, 1937, plaintiff sought to enjoin the city from enforcing certain parking meter ordinances, one of which meters was immediately in front of plaintiff's store. There the court specifically distinguished the case of *City of Birmingham* v. *Hood-McPherson Realty Co.* (*supra*) by the absence of any restrictions in the deed of dedication of the public streets of the city of

Wichita Falls, refused to declare the ordinance invalid, and denied the injunction sought.

In *Matter of Harrison* (135 Tex. Crim. App. 611; 122 S. W. [2d] 314) the Court of Criminal Appeals of Texas in a habeas corpus proceeding held that the parking meter ordinance alleged to have been violated did not transcend constitutional limitations. It also pointed out that the right of the abutter is subject to the power of the city to regulate the privilege of parking in the interest of the public safety and good order, and likewise distinguished the Alabama case.

Counsel for the defendant village also cites an unreported case entitled *Renclark Realty Co.* v. *Hinchcliffe*, where an effort was made in the Supreme Court of the State of New Jersey to enjoin the installation of parking meters in the city of Paterson, and wherein Mr. Justice HEHER denied the application.

Thus, wherever the question has been raised in other jurisdictions, the validity of the so-called parking meter ordinance has been sustained, whether raised in criminal proceedings or by an abutter, except in the State of Alabama in *City of Birmingham* v. *Hood-McPherson Realty Co.* (*supra*). No other State has followed this decision, and the unusual situation in that case, already referred to, will probably limit the decision to its particular facts.

I am, therefore, of the opinion that the enabling act of the Legislature, chapter 502 of the Laws of 1937, and the ordinance in question, constitute a *bona fide* and valid exercise of power and are reasonable and uniform in application; that they were not designed for tax purposes; and that upon the face thereof and the facts now before me, they do not constitute an illegal interference with plaintiff's right as an abutter and are not in violation of section 6 of article 1 of the State Constitution. With the wisdom or expediency of such legislation the court is not concerned. And, of course, the court must assume that the ordinance will be enforced reasonably; that parking will be limited to one hour, as the ordinance provides; that parking will not be confused with storing (*Matter of Monument Garage Corp.* v. *Levy*, 266 N. Y. 339, 344) or with temporary stopping for the purpose of loading or unloading passengers or freight (Vehicle and Traffic Law, § 2, subd. 20); that the designated spaces for parking shall be reasonably and fairly indicated so as not to make the ordinance unduly burdensome. (*Jones Beach Boulevard Estate, Inc.*, v. *Moses, supra.*) It seems unnecessary to add that if special circumstances present themselves in the improper or unreasonable enforcement of the ordinance in question, to the substantial injury of the plaintiff, it is not remediless.

In the light of the foregoing views, I grant the defendant's motion for judgment dismissing the complaint, without costs.