## 14050

OWENS v. OWENS, MAYOR, *ET AL.*

MAXWELL & QUINN REALTY CO., INC., v. CITY OF COLUMBIA

(8 S. E. (2d), 339)

January, 1940.

*Messrs. Odom, Bostick & Taylor,* for appellant,

*Messrs. Paul A. Cooper, C. T. Graydon* and *Joseph L. Nettles,* for respondents,

April 1, 1940.

The opinion of the Court was delivered by MR. E. H. HENDERSON, ACTING ASSOCIATE JUSTICE.

Columbia is the capital of South Carolina, and is situated near the geographical center of the State. A number of highways enter it from all directions. With the growth of the city, and the great increase in automobile travel, the regulation of traffic on the streets of the city has, for many years, presented a serious problem to its law enforcement officers.

Of even greater moment has become the matter of the regulation of the parking of automobiles on the streets, especially in the congested business district.

For some time ordinances have been in force limiting the time allowed for parking, but enforcement of these regulations has been most difficult. The city has assigned members of the police to make chalk marks on the tires of parked cars, and to note the time, so that they may see, on making their rounds an hour later, if the cars remain parked beyond the permitted time.

This method has proved to be quite unsatisfactory, as the chalk marks are very easily removed, and differences of opinion between the officers and the owners of automobiles are hard to settle.

As a result, on August 26, 1939, the City of Columbia, pursuant to an ordinance duly adopted by the city council, entered into a contract with an electric company for the installation of automatic parking meters on certain streets of the city.

These meters are devices about the size of a mantel clock, containing a clock mechanism, and mounted on iron stands installed along the curbing, one to each parking area. The parking areas are marked off on the street by white painted lines. The motorist who parks in one of these spaces is required to deposit into the nearest meter a penny for twelve minutes of parking time in some area, and a five-cent coin for one hour in other areas. The placing of the coin in the

meter starts the clock mechanism. The dial of the clock is visible from either side, so that the number of minutes of parking time used is at all times apparent to the police and to others.

When the legal parking time has elapsed a red marker shows on the meter. When a second coin is inserted the meter reverts to that time. If a motorist has not used all of his parking time and moves away, another motorist parking his car in the same space does not have to place a coin in the meter in order to use the remaining time as indicated upon the face of the clock.

The contract with the electric company provides that the company will furnish 1,000 to 2,000 mechanical parking meters, at a price of $57.50 each for one kind of meter, or $59.50 each for another. Seventy-five per centum of the revenue accruing from the meters is to be .paid monthly to the electric company until the purchase price is paid in full. The revenue collected is to be kept in a special fund. A trial period of six months is provided for. The city has the right within fifteen days after the expiration of the trial period to terminate the proposed contract. If the contract is thus terminated the electric company is obligated to remove the meters at its own expense, and all obligations between the parties cease.

Pursuant to the ordinance and contract, the electric company proceeded to place the meters on six blocks of Main Street, and on one block of each street intersecting Main Street to the east and west, from the southern side of Laurel Street to Gervais Street. There are no meters on Sumter Street or Assembly Street, and there is no limit for the parking of cars on those streets.

There are two cases, and they were heard together by this Court.

On November 1, 1939, the plaintiff, H. F. Owens, on behalf of himself and others similarly situated, brought an action in the Court of Common Pleas for Richland County,

seeking a permanent injunction against the operation of the meters. Mr. Owens is a traveling salesman, and resides at the Jefferson Hotel. A large proportion of the meters had been installed before the suit was begun. Temporary restraining orders have been issued, and the meters are not now in use, awaiting the determination of the case by this Court.

On January 16, 1940, the case was heard on its merits by his Honor, Judge Philip H. Stoll, and he made a decree providing that the permanent injunction be denied and the complaint dismissed.

The Owens appeal is from this judgment.

The other case, that of Maxwell & Quinn Realty Company, Inc., was brought February 10, 1940, in the Court of Common Pleas for Richland County. The plaintiff is the owner of property located at Number 1425 Main Street, and abutting thereon, and within one of the parking meter zones. His Honor, Judge J. Strom Thurmond, signed a consent order, on February 24, 1940, setting forth that the issues in this case and in the Owens case are substantially the same, with the exception that in the Maxwell & Quinn case the rights of an abutting property owner are involved; and he ordered that the cases be consolidated so that they could be heard together by this Court. He ordered that the temporary restraining order granted by him continue in force until it is properly vacated by the Supreme Court.

The question is raised by the appellant, Owens, under his fifth exception, that the ordinance is palpably a revenue-raising act.

We think that it is clearly the law that a regulatory measure of this kind may produce only such revenue as is reasonably necessary to defray the expense connected with its operation, and that an ordinance passed for the real purpose of raising revenue, under the guise of obtaining funds for the enforcement of a police regulation, is invalid.

The question is : Does it appear that the amount to be derived from the meters is so clearly in excess of the necessary expense of enforcing the ordinance as to indicate a purpose to raise revenue, and will that be the probable result of the operation of the meter system?

The plaintiffs allege no facts showing that the revenue collected will be in excess of the expenses. In the very nature of the case there can be no certainty as to the amount to be derived. It is impossible to know in advance how many of the parking areas will be used, or whether every motorist will use a full hour for his five cents or whether he will leave in less time. No doubt many people who now park their cars on Main Street will use other streets outside the meter zones. The entire matter, for the first six months, is in the nature of an experiment. Neither the cost incident to the operation of the system, nor the amount of income, can be forecast with any degree of accuracy prior to this trial. It should be noted that the penalty for overtime parking is only 50¢ to $2.50. The installation of 2,000 meters at $57.50 each will cost the city $115,000.00 and this will have to be repaid. The coins used are the two lowest ones in general use.

If it were possible to state at this time the exact amount of revenue to be derived, and the precise cost of operation, it would be very easy to say whether the income exceeds the expense of administration, but as that is impossible, we think the city should be allowed to make a charge large enough to cover the expense which may reasonably be expected.

There is nothing in the record to establish clearly the fact that the purpose of the city is to raise revenue under the guise of a police regulation. We think that the judgment and discretion of the city council on this point are entitled to much weight.

We conclude that his Honor, Judge Stoll, properly held that the ordinance is not palpably a revenue-raising act, and this exception is accordingly overruled.

Exceptions seven and eleven make the point that the City of Columbia has no authority to install a parking meter system, nor to enter into the contract for their purchase.

It is provided in the charter of the city, that "The said Mayor and Aldermen shall have, and they are hereby vested with, full and ample power, from time to time, under their common seal, to make all such ordinances, rules and regulations, relative to the streets and markets of the said city, as they may think proper and necessary, and to establish such by-laws, not inconsistent with the laws of the land, as may tend to preserve the quiet, peace, safety and good order of the inhabitants thereof." 14 Stat., page 572.

In addition to the powers conferred by their charters, Section 7233 of the Code of 1932 grants to cities "power and authority to make, ordain and establish all such rules, by-laws, regulations and ordinances respecting the roads, streets, markets, police, health and order of said cities and towns, or respecting any subject as shall appear to them necessary and proper for the security, welfare and convenience of said cities and towns."

In the case of *City of Columbia v. Tatum,* 174 S. C., 366, 177 S. E., 541, 545, this Court said: "The power of the city of Columbia as a municipal corporation to improve its streets and to regulate traffic thereon is not denied, as a general proposition. This power is necessary to the accomplishment of a primary function of all municipal governments."

And in the case of *Southern Fruit Co. v. Porter,* 188 S. C., 422, 199 S. E., 537, 539, in referring to Section 7233 of the Code, it is stated:

"This section which gives to the cities and towns of the State the authority to establish rules, by-laws, regulations and ordinances respecting the roads and streets of such cities and towns, carries with it the implied power to license as a means of regulation. * * *

"Municipalities may, of course, regulate the speed of vehicles moving along their streets, provide for proper parking, and otherwise regulate traffic conditions."

Our opinion is that the city has power to regulate in a reasonable manner the parking of automobiles on the streets, by means of a license.

These exceptions are therefore overruled.

The ninth exception in the *Owens case* is that the Court erred in not holding and finding that the ordinance is void on its face in that it seeks to impose unlawfully a license or tax on the use of the streets.

In the consideration of this question it is of the utmost importance that we should keep clearly in mind that, while the public has an absolute right to the use of the streets for their primary purpose, which is for travel, the use of the streets for the purpose of parking automobiles is a privilege, and not a right; and the privilege must be accepted with such reasonable burdens as the city may place as conditions to the exercise of the privilege.

This Court has so held with respect to other privileged uses of the streets, such as the conduct of private business thereon. *Huffman v. City of Columbia,* 146 S. C., 436, 144 S. E., 157; *Spencer v. Mabon,* 75 S. C., 232, 55 S. E., 321.

Long ago it was held by Lord Ellenborough in the English case of *Rex v. Cross,* 3 Campbell, 224, that "no one can make a stable-yard of the King's highway"; and this sound principle may be brought down to modern times and conditions by saying that no one can make a garage of the public street.

It was held in the case of *District of Columbia v. Smith,* 68 App. D. C., 104, 93 F. (2d), 650, 651, that the authority to make and enforce rules for the use of the streets " * * * necessarily includes the right to restrict the parking of cars on the public streets wherever such parking interferes unreasonably either with the use of the streets for the purposes for which they are set apart or with the duty of the city au-

thorities to keep them open so that their use may be enjoyed free of nuisances. * * *

"The power to regulate the use of streets and highways by restrictions on the parking of vehicles is one universally recognized, and its reasonable exercise is consistently upheld."

While this is a novel question in South Carolina, the validity of parking meter ordinances has arisen in a number of States, and in each of these States, with the exception of Alabama, the ordinances have been sustained as proper exercises of the police power of the municipalities. *State ex rel. Harkow v. McCarthy,* 126 Fla., 433, 171 So., 314; *Salt Lake City v. Wooley,* (Utah) case No. 10368, District Court; *Ex parte Duncan,* 179 Okl., 355, 65 P. (2d), 1015; opinion of the Justices, Mass., 8 N. E. (2d), 179; *Harper v. Wichita Falls,* Tex. Civ. App., 105 S. W. (2d), 743; *Ex parte Harrison,* 135 Tex. Cr. R., 611, 122 S. W. (2d), 314; *Gilsey Buildings, Inc., v. Incorporated Village of Great Neck Plaza,* 170 Misc., 945, 11 N. Y. S. (2d), 694; *Webster County Court v. Roman,* W. Va., 3 S. E. (2d), 631; Opinion to the House of Representatives, R. I., 5 A. (2d), 455; and *Clark v. City of New Castle,* 32 Pa. Dist. & Co. R., 371.

We think that the reason the case of *City of Birmingham v. Hood-McPherson Realty Company,* 233 Ala., 352, 172 So., 114, 108 A. L. R., 1140, reaches a conclusion different from the other cases, is that in the Alabama case the city's right to the streets was derived from a deed from the Elyton Land Company, which contained a provision that the streets should not be used for any private or individual purposes except with the consent of the land company. The decision seems to be based largely on the restrictions in the deed of dedication of the streets, rather than on general principles.

Since there can be no doubt of the right to regulate parking, the city should have a wide latitude in selecting the means to be adopted, and it may enforce a

license to cover the expense of maintaining the regulation and to hasten the departure of parked cars.

A regulatory ordinance relating to the parking of cars will be presumed to be justified by local conditions, unless the contrary clearly appears. Much should be left to the city's discretion.

We think that the city may provide meters to measure the time of parking, as well as· it may measure such time by other means.

Our opinion is that the ordinance is valid, as a proper regulation of the privilege of parking automobiles on the streets.

This exception is overruled.

In the twelfth exception in the *Owens case* the point is raised that the ordinance is void as amounting to a violation of the due process clause, and that it denies plaintiff the equal protection of the laws, under the State Constitution, Art. 1, § 5. And in the *Maxwell & Quinn case* it is claimed that the rights of the plaintiff, as an abutting property owner, are violated under both of these clauses of our Constitution, and under similar clauses of the Constitution of the United States, Amend. 14.

In our opinion the ordinance, being a valid exercise of the power of the city to regulate the privilege of parking cars on the streets, does not infringe upon the rights of the plaintiff in either case.

The first four exceptions in the *Owens case,* contending that the cause did not stand for trial on its merits when heard by Judge Stoll, and that it had never been docketed, have become academic, as is stated by appellant in his brief, so they will not be considered.

In the sixth exception it is contended that the ordinance is void, in that it delegates power to a single officer. And in the tenth exception it is said that the ordinance attempts to barter away the police power of the city.

There does not appear to be anything in the complaint, or other parts of the record, in any way bearing on these questions. They were never presented to the Circuit Judge, and were in no way passed upon by him.

The same statement applies to the eighth exception, in which it is claimed that the authority to regulate parking has been delegated to another agency of the State; and in addition, this exception is too general, and does not comply with Rule 4, Section 6.

For these reasons the three exceptions are overruled.

We turn now to the rights of an abutting property owner, which is involved in the *Maxwell & Quinn case.*

It has been uniformly held by the Courts of other states that, except for his right of ingress and egress, an abutting owner's rights in the streets are the same as any other member of the traveling public.

In the case of *Harper v. City of Wichita Falls, supra,* it was said [105 S. W. (2d), 750]:

"The public streets of the City of Wichita Falls were dedicated for use by the public at large for the purpose of travel thereon.

"Every citizen, including owners and nonowners of abutting property, has the primary right to the use of the streets for those purposes, and, as an incident thereto, the right of ingress and egress to and from property abutting on the streets for the purpose of loading and unloading passengers, merchandise, and other commodities on and from vehicles then used for transportation purposes. And the ordinance does not by its terms deny the citizen that right. But that primary right does not carry with it the right even in an abutting property owner to store his vehicle in the street for his business convenience."

It was also stated in that case: "Plaintiff's ingress and egress to and from his place of business is not obstructed by the one meter in front of it. Prior to the passage of the ordinance, the same parking and for the same length of time was allowed without charge therefor. * * * It is also a

matter of common knowledge that the public will more readily park vehicles in places where no charge is made therefor than otherwise. It is manifest, therefore, that parking meter charges may operate to plaintiff's advantage in lessening the occupancy of the parking space in front of his place of business by others than his customers at times when needed by those desiring to trade with him."

It was declared in the case of *Gilsey Buildings, Inc., v. Incorporated Village of Great Neck Plaza, supra* [170 Misc., 945, 11 N. Y. S. (2d), 698] :

" 'The rights of an abutter are subject to the right of the state to regulate and control the public highways for the benefit of the traveling public. \* \* \* Although the abutting owner may be inconvenienced by a regulation, if it is reasonably adapted to benefit the traveling public, he has no remedy unless given one by some express statute'. \* \* \*

"If plaintiff may enjoin the defendant from permitting parking for one hour in front of its premises because the time is measured by a parking meter, then parking for a like period may be forbidden, when timed by a policeman. And if plaintiff may do this because it wishes absolutely free and unobstructed access to and from the highway at all times, so can its neighbor, and its neighbor's neighbor, and thus as each abutting owner claimed the enforcement of this 'right', even reasonable parking in cities and villages could be forbidden everywhere by private individuals, a result not to be contemplated. \* \* \* So far as plaintiff's right to 'park' in front of its own premises is concerned, it is in no more favorable situation than any other member of the public at large. 'The plaintiff once upon the highway, is treated no differently than is any other member of the traveling public'."

In the case of *County Court of Webster County v. Roman, supra,* the Court said [3 S. E. (2d), 632] : "So long as a street is devoted to a reasonable public use, and the ingress

and egress of a contiguous property owner are not disturbed, he has no just complaint against the use. The police power of a municipality, under legislative delegation to regulate parking, extends to every reasonable restriction on parking.  *  *  *  Here, an abutter has no right superior to the public in the use of the street, except his right of ingress and egress."

Our opinion is that no right of Maxwell & Quinn Company, Inc., has been interfered with by the ordinance. And it is further to be noted that the action was not brought in a representative capacity, and, as was said in the case of *Harper v. City of Wichita Falls, supra,* "plaintiff could have no right to restrain the enforcement of the ordinance, as to all others than himself."

All of the exceptions in the *Owens case* are accordingly overruled, and the judgment of his Honor, Judge Stoll, is affirmed.

In the *Maxwell & Quinn case,* the temporary restraining order which his Honor, Judge Thurmond, continued in force until the cause could be heard by this Court, is vacated.

Judgment affirmed and all restraining orders vacated.

MR. CHIEF JUSTICE BONHAM, MESSRS. JUSTICES CARTER and FISHBURNE, and MR. ACTING ASSOCIATE JUSTICE J. HENRY JOHNSON concur.