BOWERS v. CITY OF MUSKEGON.

1. MUNICIPAL CORPORATIONS—PARKING METERS—ORDINANCES—STATUTES—TAXATION—AUTOMOBILES.

Since city parking meter ordinance merely imposing a fee for voluntary use of a particular space for a designated period does not thereby impose a tax upon vehicles, it is not void because of any conflict with statute pertaining to registration of motor vehicles which provides that the specific tax paid thereunder should exempt the vehicle from all other taxation, either State or local (1 Comp. Laws 1929, § 4638, as amended by Act No. 162, Pub. Acts 1941; Muskegon Parking Meter Ordinance).

2. SAME—CONTROL OF STREETS—PARKING—FEE FOR COST OF REGULATION.

Parking on a city street is a privilege subject to regulation by the proper authorities of the city entailing upon the city additional expenses for supervision and implies the power to exact a fee to defray the cost as the city has the right to the reasonable control of its streets, alleys and public places (Const. 1908, art. 8, § 28; Muskegon Charter, chap. 12, § 4).

3. SAME—CONTROL OF STREETS—PARKING—ORDINANCES.

A city, having the right to the reasonable control of its streets, alleys and public places, may enact a valid ordinance pursuant to which a fee is exacted for the privilege of parking in a particular space for a designated period (Const. 1908, art. 8, § 28; Muskegon Charter, chap. 12, § 4).

4. CONSTITUTIONAL LAW—POWER TO TAX—POLICE POWER.

A tax must be sustained on the basis of the taxing power and cannot be sustained on the basis of police power.

5. SAME—POLICE POWER—FEES—COST OF REGULATION.

A police regulation under which a fee is collected is valid only if the revenue derived is not disproportionate to the cost of regulation.

6. MUNICIPAL CORPORATIONS—PARKING METER ORDINANCE—TRAFFIC PROBLEMS—REVENUE.

In determining the validity of a city parking meter ordinance, the ordinance may not be tested on what had been done in the past nor is the experience of other cities with parking meters controlling on the question of revenue where the problems to be contended with are not shown to be identical with the traffic problem in city whose ordinance is reviewed (Muskegon Parking Meter Ordinance).

7. SAME—PARKING METER ORDINANCE—REVENUE FOR OTHER TRAFFIC CONTROL DEVICES.

Provision of parking meter ordinance that revenue derived therefrom was usable to cover cost of purchasing, leasing, installation, maintenance and regulation of parking meters was not invalid because revenue might also be used for "other traffic control devices and regulations," as such other uses are not so remote from the parking problem as to create an intent as a matter of law to raise revenue under the guise of a police regulation (Muskegon Parking Meter Ordinance, § 17).

8. CONSTITUTIONAL LAW—MUNICIPAL CORPORATIONS—ORDINANCES—COST OF REGULATION—POLICE POWER.

In determining the validity of a city ordinance enacted under the police power and charging a fee to defray the cost of regulation thereunder, the courts will not seek to avoid the ordinance by nice calculations but will promptly arrest any clear abuse of the power.

9. MUNICIPAL CORPORATIONS—PARKING—FEES—TRAFFIC PROBLEMS.

Insofar as the charging of a fee for parking in a particular place for a designated period will tend to reduce the number of cars in a congested area, diminish the vice of overtime parking, and speed up traffic, a parking meter ordinance designed for such purpose has a distinct relationship to relief of traffic conditions in congested areas of a city (Muskegon Parking Meter Ordinance).

10. CONSTITUTIONAL LAW—PARKING METER ORDINANCE—CLASS LEGISLATION.

A parking meter ordinance which applies to all persons who park cars in the designated area is not discriminatory (U. S. Const. Am. 14; Muskegon Parking Meter Ordinance).

11. SAME—CLASSIFICATION.

The question of classification is primarily for the legislature and is sufficient if it is practical and reasonable and not reviewable unless palpably arbitrary.

12. COSTS—PUBLIC   QUESTION—CONSTITUTIONALITY   OF   PARKING METER ORDINANCE.

No costs are taxable in suit to test constitutionality of a city parking meter ordinance as a public question is involved (Muskegon Parking Meter Ordinance).

Appeal from Muskegon; Sanford (Joseph F.), J. Submitted April 14, 1943. (Docket No. 34, Calendar No. 42,328.) Decided June 7, 1943.

Bill by Charles Bowers and others against City of Muskegon, a municipal corporation, and others to declare a parking meter ordinance invalid and to restrain enforcement thereof and performance of a contract. Decree for defendants. Plaintiffs appeal. Affirmed.

*Alexis J. Rogoski,* for plaintiffs.

*Edward C. Farmer,* for defendants.

SHARPE, J. This is an appeal from a decree dismissing a suit instituted by plaintiffs against defendants to .enjoin the enforcement of the parking meter ordinance of the city of Muskegon and to have said ordinance declared unconstitutional.

The ordinance was adopted April 14, 1942, and is known as the parking meter ordinance. It provides for parking meter zones on certain designated streets; for the installation of parking meters, the designation of parking spaces and the' periods when such parking meters shall be in operation. It also provides for the purchase, leasing and installation

of the parking meters; that parking meters shall be placed upon the curb, adjacent to the parking places; and for the charge to be paid by motorists for the privilege of using or occupying the designated parking spaces, while other provisions of the ordinance provide penalties for parking overtime and for other violations.

On April 24, 1942, plaintiffs filed a bill of complaint in the chancery court of Muskegon county to have the above ordinance adjudged unconstitutional and the defendants restrained from installing the meters or enforcing the ordinance. Subsequently, the parties stipulated as to the facts. The cause came on for a hearing and on January 25, 1943, the trial court entered a decree dismissing plaintiffs' bill of complaint.

Plaintiffs appeal and contend that a municipality is without power to establish a system of parking meters where, as in Michigan, there is a law providing for license fees applicable to local cars. Plaintiffs rely upon 1 Comp. Laws 1929, § 4638, as amended by Act No. 162, Pub. Acts 1941 (Comp. Laws Supp. 1942, § 4638, Stat. Ann. 1942 Cum. Supp. § 9.1438), which provides:

"The secretary of State shall collect the following specific taxes at the time of registering a motor vehicle, which shall exempt it from all other taxation, either State or local."

The provision that the registration fee should exempt the vehicle from all other forms of taxation first appeared in Act No. 318, § 2, subd. 6, Pub. Acts 1909, as amended by Act No. 181, Pub. Acts 1913. The above phrase "forms of taxation" was written into the motor vehicle law of 1915, Act No. 302, § 7, Pub. Acts 1915 (1 Comp. Laws 1915, § 4803).

In *Vernor* v. *Secretary of State,* 179 Mich. 157 (Ann. Cas. 1915 D, 128), we had occasion to interpret the 1913 amendment, which provided:

"The secretary of State shall collect the following fees before registering a motor vehicle or vehicles in accordance with the provisions of this act, which shall exempt such motor vehicles from all other forms of taxation:"

We there held that the effect and purpose of the amendment was to remove the vehicle from assessment and tax rolls of cities and other governmental units. The act was directed against additional taxes levied on the vehicle. At the present time, the law speaks in terms of "specific taxes" rather than "fees" as interpreted in the *Vernor Case, supra.*

In our opinion, the legislature in using the term "fees" or "specific taxes" had in mind that the registration fee or tax would exempt the vehicle from all other forms of taxation. The ordinance involved in the case at bar does not impose a tax upon vehicles. It merely imposes a fee for the voluntary use of a particular space for a designated period. There is no conflict between the ordinance and this provision of the statute.

In discussing other issues involved in this case, we have in mind that we are now living in a modern age; that the traffic problems are a result of our present mode of living; that cities have spent untold dollars in the construction of elevated roads, subways and parkways to take automobile traffic out of congested areas; and that any city with a population equal to that of Muskegon has its own peculiar traffic problems. We also have in mind that Const. 1908, art. 8, § 28, provides:

"The right of all cities, villages and townships to the reasonable control of their streets, alleys and

public places is hereby reserved to such cities, villages and townships."

And that the city charter of the city of Muskegon, chap. 12, § 4, provides:

"The city shall have the power to use, control and regulate the streets, alleys, and public grounds of the city and the spaces above and below the same, subject only to the laws of the State and limitations of this charter, but no use thereof shall be granted that shall be exclusive or inconsistent with the public interests."

It must be assumed that parking in a city street is a privilege and subject to regulation by the proper authorities of the city entailing upon the city additional expenses in order that there may be proper supervision and regulation. If parking is a privilege and not an absolute right, the power to regulate implies the power to exact a fee for the cost of such regulation.

Plaintiffs urge that the parking meter ordinance is by its express terms a revenue-raising measure and is, therefore, void.

Section 17 of the ordinance reads as follows:

"The five-cent and one-cent coins required to be deposited in parking meters as provided herein are hereby levied and assessed as fees to provide for the proper regulation and control of all parking and traffic upon the public streets, and alleys, also the cost of supervision and regulating the parking of vehicles in the parking meter zones created hereby, and to cover the cost of the purchasing, leasing, acquiring, installation, operation, maintenance, supervision, regulation, of the parking meters described herein and other traffic control devices and regulations."

In support of their claim that the ordinance is a revenue-raising measure, the argument is made that, assuming the parking meters were in continuous use under the ordinance, they would yield to the city of Muskegon annual revenue of about $18,000 in excess of the cost of acquiring, maintaining and policing the meters and defraying the other expenses incident to the enforcement of the ordinance.

The trial court found as a fact:

"The ordinance in question neither directly nor indirectly aims to raise revenue for other purposes save the regulation, supervision and enforcement of the ordinance and the proper regulation, supervision and control of all parking and traffic upon the public streets and alleys."

It is the accepted rule that a tax must be sustained on the basis of the taxing power and cannot be sustained on the basis of police power; and that it is a valid police regulation only if the revenue derived is not disproportionate to the cost of regulation. See *Detroit Retail Druggists' Ass'n* v. *City of Detroit,* 267 Mich. 405. It cannot be said from reading the ordinance as a whole that it was contemplated that excessive revenue would be produced. In *Detroit Retail Druggists' Ass'n* v. *City of Detroit, supra,* we held that an ordinance was not to be tested on what had been done in the past. Nor can the experience of other cities with parking meters be controlling on the question of revenue as the problems to be contended with are not shown to be identical with the traffic problem in Muskegon. Nor can it be said that receiving revenue for "other traffic control devices and regulations," as provided in section 17 of the ordinance, is so remote from the parking problem that to contemplate proceeds for such purposes from the parking meters is to create

an intent as a matter of law to raise "revenue under the guise of a police regulation."

Other States have had traffic problems and the validity of parking meters have been upheld in: *County Court of Webster County* v. *Roman,* 121 W. Va. 381 (3 S. E. [2d] 631); *Ex parte Duncan,* 179 Okl. 355 (65 Pac. [2d] 1015); *State, ex rel. Harkow,* v. *McCarthy,* 126 Fla. 433 (171 South. 314); *In re Opinion of the Justices,* 297 Mass. 559 (8 N. E. [2d] 179); *Harper* v. *City of Wichita Falls* (Tex. Civ. App.), 105 S. W. (2d) 743; *Foster's, Inc.,* v. *Boise City,* 63 Idaho, 201 (118 Pac. [2d] 721); *City of Phoenix* v. *Moore,* 57 Ariz. 350 (113 Pac. [2d] 935); *City of Columbus* v. *Ward,* 65 Ohio App. 522 (31 N. E. [2d] 142); *Kimmel* v. *City of Spokane,* 7 Wash. [2d] 372 (109 Pac. [2d] 1069); *Hendricks* v. *City of Minneapolis,* 207 Minn. 151 (290 N. W. 428); *Owens* v. *Mayor,* 193 S. C. 260 (8 S. E. [2d] 339); *Ex parte Harrison,* 135 Tex. Crim. 611 (122 S. W. [2d] 314); *Gilsey Buildings, Inc.,* v. *Village of Great Neck Plaza,* 170 Misc. 945 (11 N. Y. Supp. [2d] 694); *City of Louisville* v. *Louisville Automobile Club, Inc.,* 290 Ky. 241 (160 S. W. [2d] 663).

While in the following States parking meters were held to be revenue measures and as such were held invalid as police regulations: *M. H. Rhodes, Inc.,* v. *Raleigh,* 217 N. C. 627 (9 S. E. [2d] 389, 130 A. L. R. 311); *City of Birmingham* v. *Hood-McPherson Realty Co.,* 233 Ala. 352 (172 South. 114, 108 A. L. R. 1140); *City of Shreveport* v. *Brister,* 194 La. 615 (194 South. 566).

In *State, ex rel. Harkow,* v. *McCarthy, supra,* the court considered the problem in more general terms and applied the rule normally applied to the licensing of a business and held that in considering the expenses "all the incidental expenses that are likely to be imposed upon the public" might also be con-

sidered, adding, "the courts will not seek to avoid an ordinance by nice calculations of the expense of enforcing police regulations, but will promptly arrest any clear abuse of the power."

In *Ex parte Harrison, supra,* the court held that the city's power to regulate parking of automobiles on streets implies the power to exact a fee of sufficient amount to cover expenses of maintaining the regulation—such charge is a "license fee" not a "tax."

*Ex parte Duncan, supra,* holds that where there is no showing that a city is making unjustified profits by using the ordinance to raise revenue rather than as a regulation, the ordinance is valid.

*Gilsey Buildings, Inc.,* v. *Village of Great Neck Plaza, supra,* holds that charging a "small fee" is a proper regulation to hasten departure of parked vehicles and to help defray the costs of installation and supervision of parking meters.

In the case at bar, there has been no satisfactory showing that the expense of enforcing police regulations, under the meter system, will be disproportionate to the cost of such regulations. Until such showing is made, we must conclude that the ordinance is one for the regulation of traffic and not to raise revenue.

It is next urged that there is no reasonable relation between the restrictions imposed by the ordinance and the conditions sought to be remedied. There is evidence in the record that prior to the adoption of the ordinance the method then in use to control the congested area was inadequate. In our opinion, the ordinance will have a deterring effect upon parking, especially so where there is an expense connected with such parking. In a city the size of Muskegon there must be many motorists who have some of the characteristics of a "canny

Scot'' and will park their cars out of the ''fee'' district. The effect will be a reduction in the number of cars in congested areas. The parking meter should diminish the vice of overtime parking and speed up traffic. In that sense, the parking meter has a distinct relationship to the conditions sought to be remedied.

It is next urged that the parking meter is repugnant to the 14th amendment of the Federal Constitution. There is no merit to this claim. The parking ordinance applies to all persons who park cars in the designated area. No actual inequality is apparent, but even if it did exist, to some degree, it has been held that a reasonable classification need not operate with mathematical nicety and that some inequality would not of itself make it unconstitutional. See *Seifert* v. *Buhl Optical Co.,* 276 Mich. 692.

In *Miller* v. *Detroit Savings Bank,* 289 Mich. 494, we said:

''The question of classification is primarily for the legislature and is sufficient if it is practical and reasonable. It is not reviewable unless palpably arbitrary.''

The failure of plaintiffs to show that the ordinance is arbitrary, unreasonable, discriminatory or one for the purpose of raising revenue compels us to affirm the trial court in dismissing plaintiffs' bill of complaint. No costs will be taxed as a public question is involved.

BOYLES, C. J., and CHANDLER, NORTH, STARR, WIEST, BUTZEL, and BUSHNELL, JJ., concurred.