EDWARD BIGELOW et al *vs.* THE INHABITANTS OF THE CITY OF PERTH AMBOY.

1 The city council of Perth Amboy are authorized to regulate the streets and walks of the city, and consequently to incur debts for that purpose.

2. The right of the creditor to recover for materials furnished to the city, at the instance of the common council, cannot depend upon the use to which they are applied, nor upon the compliance by the city authorities with the requirements of the city charter in the mode of using them.

3. Nor can his right to recover be prejudiced by the neglect of council to keep proper minutes of their proceedings.

Action of .debt to recover the price of flagging, furnished by the plaintiffs to the defendants, pursuant to a contract made with the mayor of the city. The declaration contained two counts. 1. On a sealed bill given by the mayor, under the common seal of the city, for the price of the stone. 2. A common count for the value of the stone. On the trial at the Middlesex circuit, a verdict was rendered for the plaintiffs for the amount of the demand. A rule *nisi* for a new trial having been granted, the case came on for argument, upon the rule, before the CHIEF JUSTICE, and POTTS and VREDENBURGH, Justices.

*Blauvelt*, for defendant, in support of the rule.

The sealed bill is clearly void. There was no authority to make it.

The debt was contracted without authority. The council had no authority under the city charter to pave the streets, or to contract debts for that purpose. They have no power to impose taxes, The citizens refused, in town meeting, to raise money for the purpose proposed. Money was appropriated by council to purchase flagging, not for the use of the city, but to sell to individuals for the purpose of paving. It was converting a municipal corporation into a mere trading company. No authority is conferred by the charter for such purpose. It was not within the scope of their powers, nor was the power exercised in the method prescribed by the statute.

The first step prescribed by the statute was to pass an ordinance requiring the inhabitants to pave. If they refuse to comply, the corporation may do the work; but the corporation have no authority to do the work in the first instance, or to purchase stone for the use of individuals. *Elmer's Dig.* 672, § 9; *Pamph. L.* 1844, *p.* 122, § 3, 8; *Pamph. L.* 1853, *p.* 171, § 10.

The council were bound to exercise their powers in the method prescribed by the charter. 2 *Kent's Com.* 298, §

10; 2 *Denio* 110; 4 *Saund Sup. Court. Rep.* 221; 2 *Cranch* 166; 12 *Wheaton* 40.

*Parker*, for plaintiffs, cited *Angell & Ames*, § 228, 256.

The CHIEF JUSTICE delivered the opinion of the court.

This action is brought to recover the value of a lot of flagstone, sold and delivered by the plaintiffs to the defendants. The declaration contains a count for the value of the stone, and also a count upon a sealed bill, given by the mayor, under the city seal, for the price of the stone. The trial of the cause at the circuit, and the argument here, proceeded on the ground that the sealed bill was invalid, the plaintiffs relying exclusively upon the evidence in support of the common count.

It was clearly proved that the contract for the stone was made by the mayor of the city, and that the stone was delivered by the defendants, in pursuance of the contract, upon the wharf in Malden, on the 6th of July, 1853. Prior to the purchase, the city council had resolved that 25,000 feet of flagstone should be provided at once for the use of the city, and the mayor was appointed commissioner to carry the resolution into effect. A copy of this resolution, certified by the city clerk, was exhibited to the clerk of the plaintiffs, at the time of the purchase. The sole objection to the plaintiff's right of recovery is that the purchase of the stone was an excess of authority, either in the council or in the mayor, or in both.

The charter of the city authorizes the common council to make by-laws and ordinances relative to the laying out and regulating of streets or highways and public walks within the city, and also relative to the mode of taxation, and amount of taxes to be levied by the vote of a legal town meeting for the use of the city. *Paterson* 67, § 9; *Pamph. L.* 1823, *p.* 124, § 11.

The act of 1853, § 10, (*Pamph. L.* 171) authorizes the city council to make and establish ordinances and regulations for the grading, curbing, and flagging the streets and sidewalks of the city, and to require the work to be done by the owners of lots fronting on such streets, under the superintendence of the city commissioners ; and if the owner refuse to pave in compliance with the ordinance, the act authorizes the common council to do the work and recover the amount.

It is objected that the city council have no power of taxation, and therefore no power to create a debt. But, by the terms of their charter, they have authority to regulate the streets and walks of the city and to direct the amount of taxes to be levied. The authority to create a debt has no connection with or dependence upon the power of taxation. The board of chosen freeholders have no power to assess taxes, or even to direct the amount to be levied yet they have undoubted power to bind the county by their contracts.

But the objection mainly insisted on is that the city council did not proceed in the matter of paving in compliance with the directions of the act of 1853. The council were bound, it is insisted, first to pass an ordinance requiring the owners of lots to pave, and if they refused, then, and then only, council had authority to pave. The objection results in this, that council purchased the stone before they passed the ordinance, whereas they ought to have passed the ordinance first, and not to have purchased the flagging till it was ascertained that the lot owners would refuse to pave, and that the flagging would be required for the use of the city.

The whole argument is founded on a misapprehension of the limitation of the corporate powers by the charter and of the design of the act of 1853.

It is doubtless true that corporate powers are to be exercised in the mode prescribed by the act of incorpora-

tion; and if the city had sought to recover against the owner of a lot the cost of flagging the walk in front of it, they must have shown a strict compliance with the requirements of the act, because council are authorized, in that mode only, to make the owner of the lot liable for the cost of paving. But, as between the creditors of the city and the corporation, the only question is, whether the city agents, the mayor and council, had the power of purchasing the material in question. How the material was used, or whether it was used at all, is to the creditor a matter of total indifference.

That the council had the power to purchase the flagging for the city, is not denied. It is a power necessarily incident to powers expressly conferred.

Nor is the power over the streets and sidewalks conferred by the act of 1853. That act merely regulates the exercise of previously existing powers. The title of the act is, "An act to regulate the laying out of streets and highways in the city of Perth Amboy, and the grading and improvement of the same." The power of regulating the streets and public walks existed in council under the charter, and consequently the power of providing the necessary materials for the purpose. If there be any doubt upon this point, the power is clearly conferred by the act of 1853; and the right of the creditor to recover for materials furnished, can in nowise depend upon the use to which they are applied, or upon the compliance by the city authorities with the requirements of the charter in the mode of using them.

Nor can the right of the creditor to recover depend upon the regularity with which the minutes of the city council are kept, nor whether they are kept at all. It is expressly proved, by the city clerk, that a resolution substantially the same as that shown to the clerk of the plaintiffs was passed by the council. Whether the resolution furnished to the mayor was copied from the minutes, or furnished to him

before the minutes were recorded, or whether they were recorded at all, is a matter which cannot prejudice the claim of the creditor.

The motion for a new trial must be denied.

CITED in *Knapp* v. *Mayor, &c., of Hoboken,* 9 *Vr.* 374; *Troy* v. *A. & N. R. R. Co.,* 11 *Kan.* 530; *Bonesteel* v. *New York,* 6 *Bosw.* 566; *Harlem Gaslight Co.* v. *New York,* 3 *Rob.* 126; *Mills* v. *Gleason,* 11 *Wis.* 495.