*In re* OPINION. TO THE HOUSE OF REPRESENTATIVES.

APRIL 13, 1939.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

April 13, 1939.

To the Honorable, the House of Representatives
   of the State of Rhode Island and
      Providence Plantations:

We have received from the honorable house of representatives a resolution requesting, in accordance with article

XII, sec. 2, of amendment to the constitution, our written opinion upon a question of law. That question is stated as follows:

"Did the former Bureau of Police and Fire of the City of Providence have any legal right to authorize the installation of park-o-meters in said city of Providence?"

Public laws 1935, chapter 2275, transfers control of the police department of the city of Providence to the bureau of police and fire, hereinafter called the bureau, which, to our knowledge, is still in existence under and by virtue of that act. The word "former" in the above question was probably used to refer to the former personnel of the bureau. We therefore interpret the resolution as asking us whether, under the charter of the city of Providence, or any of its amendments, or by P. L. 1935, chap. 2275, the city, acting through the bureau of police and fire, received from the general assembly authority to provide for the installation of park-o-meters.

As commonly understood in our community, the word "park-o-meter", or "parking meter", which latter term we shall hereinafter use, connotes the requirement that a traveler pay a charge for parking, in certain areas and for stated and varying periods of time, on the public highways of the city, where such parking meters are installed. We believe that this element is fairly included in the question addressed to us, and that the house thereby did not intend to inquire merely whether the city of Providence could install at the city's expense mechanical devices known as parking meters, without any reference to the imposing of a charge upon the traveling public for use of the highways for parking where such meters are installed. Therefore, we shall give the question before us its broader meaning and shall construe the word "park-o-meter" in the question, as connoting the requirement that a traveler must pay a charge for parking a vehicle in the space where a parking meter is located, in order to avoid a penalty.

The question of the bureau's authority to regulate traffic on the city's highways by the use of parking meters as above interpreted was one of the questions involved in the litigated cases of *State* v. *Goldberg,* 61 R. I. 46, 1 A. 2d 101. Those cases were certified to us from the police court of Providence in accordance with the provisions of general laws 1923, chapter 348, section 1. We held there that the certification was premature; and that it was the duty of the police court to construe P. L. 1935, chap. 2275, and determine for itself, in the first instance, whether under that statute the bureau was granted the authority to pass and enforce regulation 36, sub-section (e), sec. 3.

This regulation prohibited the parking of vehicles in any parking meter space "while the parking meter in said space indicates that there has been no five-cent coin of the United States of America inserted in said parking meter within the parking time limit as set forth in section 29 of these Regulations." The defendants in those cases were charged with violating this regulation. The opinion in the *Goldberg* cases was filed August 4, 1938. We are not aware that the parties in interest have since brought the matter to the attention of a justice of the police court for his determination of the above-mentioned question.

Ordinarily we would be unwilling to express an opinion which might affect the outcome of a case actually pending in court. However, since the house has asked the question, we are impelled to the conclusion that it probably has under consideration legislation affecting parking meters; and that it desires an answer to this question because it feels that such answer is necessary to enable it to properly perform its legislative functions. Furthermore, it may well be that the house, which is now in session, was moved to take this course because it felt that a long period of time had elapsed since our opinion in the *Goldberg* cases, apparently without any effort by the parties therein to obtain a construction of the pertinent statute.

Moreover, the duty of answering the question propounded by the house is mandatory on us under art. XII, sec. 2, of amendment to our constitution, which section reads as follows: "The judges of the supreme court shall give their written opinion upon any question of law whenever requested by the governor or by either house of the general assembly." Therefore we feel constrained in these circumstances to answer the question as above interpreted.

Clause 1 of section IX of the Providence city charter, as amended by chap. 598, of March 8, 1866, conferred upon the city council the power to make laws, ordinances and regulations for the government of the city relative to the streets, sidewalks, and highways of said city. P. L. 1901, chap. 930 created a board of police commissioners for the administration of the police affairs of the city, but it was given no power to regulate traffic, which continued to be regulated by the city council under the charter. In 1928 the legislature enacted chap. 1196, specifically granting to the city council the power to "pass such ordinances, by-laws and regulations as they may think proper in relation to the parking of vehicles," within the limits of the city, subject to certain restrictions not pertinent here.

By P. L. 1931, chap. 1710, a state-appointed board of public safety was substituted for the board of police commissioners, the act granting to the former of these boards general police power and also the "authority to make all needful rules and regulations . . . for the regulation and control of traffic in said city, not inconsistent with the laws of the state." All powers then vested in the city council concerning "the regulation and control of traffic in said city" were conferred upon and vested in the board of public safety. This board was replaced by a state-appointed director of public safety with like powers by P. L. 1935, January session, chap. 2186. In May 1935, chap. 2275 was enacted, creating a bureau of police and fire, appointed by the mayor, to succeed the director of public safety, and gave to it the same

powers concerning "the regulation and control of traffic" as were previously vested by the legislature in the director of public safety and his predecessor, the board of public safety. This bureau promulgated regulation 36, sub-section (e), sec. 3, which gave rise to the cases of State v. Goldberg, supra, and to the present question from the house of representatives.

We find no provision in the Providence city charter, or in any act of the legislature, which expressly confers upon the bureau the power to impose, by ordinance or other regulation, a requirement that a traveler must pay a fee or charge, by means of parking meters, for the parking of a vehicle in certain areas in the public highways of the city. We must therefore resort to construction of the statute in deciding whether such power is granted by necessary implication. The rules that apply in such a case are well known and, although stated by the courts in varying language, they are all to the same effect.

It is a fundamental rule of construction that a statute, purporting to delegate to a municipal agency the power to enact ordinances or regulations of this character cannot be enlarged by implication unless that is necessary to make the statute effective and to accomplish its object. Such a rule was substantially recognized and cited with approval by this court in State v. Fiske, 9 R. I. 94.

In construing a grant by the legislature to a municipal agency of a legislative power, it is well established that ambiguity or doubt arising out of the terms used by the legislature in the statute must be resolved in favor of the public. Heeney v. Sprague, 11 R. I. 456, 462; State v. Fiske, supra. In the former case this court, speaking of the application of an ordinance says: "The power to enact ordinances is granted for particular local purposes. It includes or is coupled with a power to prescribe limited punishments by fine, penalty, or imprisonment for disobedience . . . . The power, being delegated, should be strictly construed." See also Smith v. Town of Westerly, 19 R. I. 437, 443.

We are bound to apply these rules to the matter before us. The use of these parking meters on the public highways of Providence is of very recent origin and is a distinct departure from the ways and means theretofore followed by the city in the regulation and control of traffic on such highways. It is true that the Providence city charter and the statute, P. L. 1935, chap. 2275, grant certain power to regulate and control traffic; but these enactments of the legislature do not say, either expressly or by necessary implication, that the bureau shall have the power to impose a fee or charge upon a traveler for the use of certain areas in the public highways, where these parking meters may be located.

It is significant that, at no time prior to the installation of parking meters, did the city attempt to collect, by any method, a fee or charge for parking on the public highways. It is also highly significant that, in delegating power to the city or bureau to collect money from the public, even by way of a penalty or fine, the legislature granted such power in clear and unmistakable terms. If the legislature, by enacting P. L. 1935, chap. 2275, intended to give the city or bureau power also to impose a fee or charge for parking, it would have done so in equally definite and unequivocal language.

We are not concerned here with the city's authority, when properly granted by the legislature, to regulate and control traffic on its public highways by necessary and reasonable ordinances, regulations and rules made in the interest of the general public, and where no payment of a charge or fee for parking thereon is imposed.

The only question before us, reduced to its simplest terms, is: Had the bureau of police and fire, under the city's charter, as amended, or by the provisions of P. L. 1935, chap. 2275, the power to exact a fee or charge, by the use of parking meters, from a traveler for parking in certain areas of the public highways of the city?

Confining our opinion strictly to the question submitted to us as herein interpreted, we are clearly of the opinion that the bureau of police and fire had no such power.

Respectfully submitted,

EDMUND W. FLYNN
WILLIAM W. MOSS
ANTONIO A. CAPOTOSTO
HUGH B. BAKER
FRANCIS B. CONDON.