## KARPARK CORP. v. TOWN OF GRAHAM et al.

### Civ. No. 502.

United States District Court M. D. North Carolina, Greensboro Division.

July 30, 1951.

Clark, Robinson & Hellebush, Cincinnati, Ohio, Cooper, Sanders & Holt, Burlington, N. C., for plaintiff.

Forrest C. Hall, Graham, N. C., Thomas C. Carter, Burlington, N. C., and W. I. Ward, Jr., Statesville, N. C., for defendants.

WARLICK, District Judge.

The plaintiff in this action seeks Specific Performance of a written contract, alleged by it to have been entered into between the parties to this action, for delivery and installation of certain parking meters, payment for which was expressly and solely provided for out of the receipts, funds and revenue subsequently to be obtained from the operation thereof,—and· invokes the jurisdiction of this court for decree of Declaratory Judgment under the provisions of the Federal Declaratory Judgment Act, as amended, 28 U.S.C.A. §§ 2201–2202 and Rule 57, Federal Rules of Civil Procedure, 28 U.S.C.A.

Findings of Fact:

Plaintiff is a Delaware Corporation and has its principal place of business in Cincinnati, Ohio, and is wholly engaged in the manufacture, sale and installation of parking meters. The defendant, Town of Graham, is a municipal corporation, a political sub-division of the State of North Carolina, located in Alamance County in said state, and is the county seat of such county.

John H. Crawford is the duly elected Mayor of said town and Dean Andrews, Herman Morris, T. R. Harden, Jr., Harvey Linens and W. F. Okey are Commissioners and constitute as such the Board of the Town of Graham. All the individual defendants were duly elected by the voters of said town and subsequently qualified for such offices and are acting in ·such capacity.

On September 19, 1947, plaintiff entered into a written contract with the Town of Graham, acting by and through its *then* Mayor and Board of Town Commissioners, in which the defendant, Town of Graham, agreed to purchase and the plaintiff agreed to sell and deliver to it 173 one-hour automatic parking meters for the price of $71.-50, each, and subsequently, on March 3, ·1948, plaintiff again contracted with the defendant to furnish the defendant 43

two-hour automatic parking meters at the same price per meter, which effected a total contract price to be paid by the defendant to the plaintiff of $15,444.00. The meters purchased under the contract were delivered to the Town of Graham during the months of January and April, 1948, and were subsequently installed on those streets of said town as designated by an ordinance of said town duly adopted.

(Copy of contract entered into is attached hereto and constitutes one among the findings of fact.)

Obedient to the contract entered into between the plaintiff and the Town of Graham, and with respect to this particular provision "Ordinance and Resolution Enforcement, The City will agree to enact and will enforce in good faith all ordinances and resolutions relating to the installation and operation of said parking meters and those providing for the collection of a fee for parking opposite said meters installed in said City until all parking meters installed under this contract shall have been fully paid for * * *", the Board of Commissioners in regular session of said Board on January 5, 1948, by virtue of the General Statutes of North Carolina, § 160–200, as amended, unanimously adopted an ordinance providing for a parking meter area and for the regulation of parking on the streets of said town.

(Copy of this ordinance and its adoption is attached hereto and is made a part of these findings of fact.)

During the period of time intervening between the date of the execution of the contract and the delivery and installation of said meters, and July 1, 1949, the defendant, Town of Graham, through its duly qualified officials, remitted to the plaintiff $5,046.29 as payment under the terms of the contract for the parking meters theretofore purchased, and subsequently installed on the streets of said town, and correspondingly retained in the treasury of the town a similar amount,—for the purposes intended, and there is now due the plaintiff and unpaid, under the terms of said contract, the sum of $10,279.21.

The present Mayor and members of the Board of Town Commissioners, defendants herein, upon their induction into office, have refused to operate the parking meters and have since that time failed and refused to enforce in good faith the ordinance adopted by their predecessors in office, and have consistently failed and refused to collect any fees for the operation of said meters and through such action have neglected or purposely refrained from paying the plaintiff any sum or sums whatsoever due to it under the contract entered into. Moreover on demand made the defendants have notified plaintiff that they will not enforce said ordinance and will refuse consistently to abide the terms of said contract and have thereupon repudiated it.

Following the institution of this action the defendants constituting the present Board adopted a resolution repealing the ordinance attached to and made a part of these findings of fact relating to the operation and maintenance of the parking meters, and have subsequently notified the plaintiff that they had repealed said ordinance as enacted by their predecessors in office.

The 43 meters additionally purchased under the contract were ordered in due course from the plaintiff by the defendant, Town of Graham, and its then Board of Town Commissioners on March 3, 1948, and at a time following the operation and use of the 173 previously purchased under the terms of the contract. This was done under a resolution of the Board of Commissioners in a meeting duly held and became as such a part of the original order, since it was enacted under the same circumstances as was the original purchase. Two certain payments were made by the defendants to the plaintiff on June 29, 1949, in the sum of $202.25, and subsequently in October 1949, $118.50 was remitted to the plaintiff by the defendants.

On the facts above found, I make the following conclusions of law:

The defendants in their answer allege in substance the following as a complete defense:

a. That plaintiff fails to state a claim in its complaint which can be entertained and determined, under the relief sought.

b. That this court has no jurisdiction of the cause of action in that the amount sought to be recovered is not within the amount as prescribed by statute.

c. That the controversy is not a proper one in which the jurisdiction of this court can be invoked for that the matters alleged in the complaint "involve purely local state statutory law."

d. For that the said purported contract is invalid and void in that there is no statute in North Carolina which purports to authorize the Town of Graham to enter into or make such contract, and that such contract is unenforceable.

e. For that the Town of Graham, if such authority did exist to enter into such contract, did not execute the same in accordance with the provisions of the General Statutes of North Carolina, § 143–129 in that such statute provides for the publication of notice in the event the amount embraced in the purported contract is in excess of $1,000.

f. For that the Town of Graham had no legal authority to pledge its credit for the purchase of said meters in that the same was not a necessary expense and was not voted upon by the duly qualified electors of said municipality. G.S. §§ 160–59, and 160–62.

g. For that G.S. § 160–200 is unconstitutional and void.

h. For a summary dismissal on the pleadings filed.

Blackstone defines a contract in this manner: "A contract is an agreement, upon sufficient consideration, to do or not to do a particular thing," and that definition has been continuously used through many years as a guide with respect to the dealings of one with another.

The General Assembly of North Carolina enacted G.S. § 160–200, subsection 31, being Chapter 564 of the Public Laws of North Carolina, 1945, as amended by Chapter 7 of the Public Laws of North Carolina, 1947, and thereby enlarged the powers of municipal corporations in the state as follows:

"31. To provide for the regulation, diversion, and limitation of pedestrians and vehicular traffic upon public streets, highways, and sidewalks of the city and to regulate and limit vehicular parking on streets and highways in congested areas.

"In the regulation and limitation of vehicular traffic and parking in cities and towns the governing bodies may, in their discretion, enact ordinances providing for a system of parking meters designed to promote traffic regulation and requiring a reasonable deposit (not in excess of five cents per hour) from those who park vehicles for stipulated periods of time in certain areas in which the congestion of vehicular traffic is such that public convenience and safety demand such regulation. The proceeds derived from the use of such parking meters shall be used exclusively for the purpose of making such regulation effective and for the expenses incurred by the city or town in the regulation and limitation of vehicular parking, and traffic relating to such parking, on the streets and highways of said cities and towns. Nothing contained in chapter two, section twenty-nine, of the Public Laws of one thousand nine hundred and twenty-one, or in section sixty-one of chapter four hundred and seven of the Public Laws of one thousand nine hundred and thirty-seven shall be construed as in any way affecting the validity of these parking meters or the fees required in the use thereof.

"The governing authorities of all cities and towns of North Carolina shall have the power to own, establish, regulate, operate and control municipal parking lots for parking of motor vehicles within the corporate limits of cities and towns. Cities and towns are likewise hereby authorized, in their discretion, to make a charge for the use of such parking lots."

Under the terms of that statute the contract herein was entered into by the parties to this agreement. This statute unquestionably was enacted by the Assembly in line with a decision of the North Carolina Supreme Court decided on June 8, 1940, and to cure the apparent defects existing in the general law as determined by the decision in that case. Rhodes, Inc., v. City of Raleigh, 217 N.C. 627, 9 S.E.2d 389, 130 A.L.R. 311.

128

It can hardly be doubted but that the parking meter has become deeply imbedded into the economic structure of North Carolina municipalities,—for that it would seem that every city and town and hamlet has adopted this means of undertaking to remedy and possibly control the use of its streets and highways and eliminate as much as possible the congestion thereon. No instrumentality has entered the everyday life of the average American in our day and generation as has the automobile; none has been more useful in furthering our economy and no one thing has brought about as much material advancement or has occasioned as much thought or imposed as many burdens in our governmental structure. Its revenues are enormous and its requirements from the governing authorities are well nigh inexhaustible. They, so to speak, like the poor, would seem to be with us always. Their regulation and control present almost insurmountable obstacles and yet in our general life must be dealt with so that our progress can continue.

The right to regulate motor vehicular traffic on the streets and highways of our cities and towns legally comes about under the "police power", broad that it is in the municipal authorities of North Carolina, and obviously the revenues from parking meters are levied and collected under the inherent police power to regulate traffic and are so regarded as defraying the costs of such regulation of traffic, etc.

In this late date it could hardly be successfully contended that the board of commissioners of a municipality could repudiate a solemn contract of its predecessors in office, regularly entered into and binding on the town, and not become amenable for their acts committed. This would likely not require the citation of any authority and presumably is so academic as to be not debatable. If, under the statutory law of North Carolina, authority lay in the then Board of Commissioners of the defendant to make such contract, and if such contract was duly entered into according to the laws of North Carolina, then unquestionably such would be valid to all intents and purposes and would be

an obligation of the Town of Graham which should be respected and which would be enforced in the courts of the land. Our inquiry, therefore, is to determine whether or not for the purpose of this action, such statute is valid.

The Supreme Court of North Carolina has not passed upon the constitutionality of the statute in question. A case was recently before it but the decision was laid on other points involved and the constitutionality was not decided. State v. Wilkes, 233 N.C. 645, 65 S.E.2d 129, 130. Therein Mr. Justice Ervin said "This course is in keeping with the settled practice that courts do not pass on constitutional questions until the necessity for so doing has arisen." Horner v. Chamber of Commerce, 231 N.C. 440, 57 S.E.2d 789, and thereupon in the absence of such, I am regarding the statute under which the contract was executed as a properly enacted law by the General Assembly of North Carolina.

"The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply." U.S.C.A. 28, Judiciary and Judicial Procedure, § 1652.

This rule of procedure has been universally followed by the Federal courts as is evidenced in many decisions. Cohen v. Beneficial Industrial Loan Corporation, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528.

Judge Soper, speaking for our own Fourth Circuit, follows the same rule in saying: "The law of Virginia, as declared by its legislature or by its highest court, is decisive in a case of this kind". American Nat. Ins. Co. of Galveston, Tex. v. Belch, 4 Cir., 100 F.2d 48, 50.

In this connection I am not unmindful of the line of decisions of our Supreme Court as is set out in Railroad Commission of Texas v. Pullman Co. and others, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971. These decisions are all strongly relied upon by the defendant. They are easily distinguishable. There the jurisdiction of the United

States Courts was sought to have declared unconstitutional a statute as enacted by the law making body of Texas, and in a well reasoned opinion it was held that the district court should retain the bill pending a determination of proceedings to be brought with reasonable promptness in the state courts of Texas. These facts seemingly are not at all analogous.

Parking meter statutes similar to the one here involved have been before the courts in a number of states and seemed to have received well nigh unanimous decisions from such courts. State ex rel. Harkow v. McCarthy, 126 Fla. 433, 171 So. 314, Salt Lake City v. Wooley (Utah) case No. 10368, District Court. Ex parte Duncan, 179 Okl. 355, 65 P.2d 1015; Opinion of the Justices, 297 Mass. 559, 8 N.E.2d 179; Harper v. City of Wichita Falls, Tex.Civ. App., 105 S.W.2d 743; Ex parte Harrison, 135 Tex.Cr.R. 611, 122 S.W.2d 314; Gilsey Buildings, Inc., v. Incorporated Village of Great Neck Plaza, 170 Misc. 945, 11 N.Y.S.2d 694; Webster County Court v. Roman, 121 W.Va. 381, 3 S.E.2d 631; Opinion of the House of Representatives, 62 R.I. 347, 5 A.2d 455; Clark v. City of New Castle, 32 Pa.Dist. & Co.R. 371.

■ These decisions give me the opinion that the act of the General Assembly of North Carolina under which the contract was executed, and the ordinance in question, constitute a bona fide exercise of the police power inherently in the Board of Town Commissioners of the defendant, Town of Graham, and that both are reasonable and uniform in application. Further there is no doubt of the power of the defendant municipality to regulate by ordinance its street traffic necessary for public safety and for good order and to reasonably limit the parking time of motor vehicles using such streets in congested areas.

■ It is to be noted in this case that the contract specifically provides that "payment for said meters by the city to the company shall be solely out of the receipts, funds and the revenues obtained from the operation of said meters, and there shall be no obligation on the part of the city to pay for the same from any other source". This "special fund" doctrine has been recognized in North Carolina over a considerable period of time and is firmly established in this state. Williamson v. City of High Point, 213 N.C. 96, 195 S.E. 90; McGuinn v. City of High Point, 217 N.C. 449, 8 S.E.2d 462, 128 A.L.R. 608, and many other decisions by our courts in North Carolina.

The jurisdiction here is through diversity of citzenship and involves an amount in excess of $3,000. Title 28 U.S.C.A. § 1332.

■ I therefore conclude that the contract entered into between the plaintiff and the defendant at the time of its execution is a binding and enforceable agreement; that defendants have without leave of right abrogated said contract and have refused to abide the terms thereof, and that in order to properly give effect to the contract as executed that the court should give its power so that the terms thereof can be made enforceable and the rights thereunder be given protection. It is therefore my judgment that the Town of Graham is legally obligated to carry into effect its contract solemnly entered into with the plaintiff and to thereupon operate said parking meters until the claim therefor of the plaintiff against the defendant is satisfied in full,—at which time when said parking meters will then be paid in full, that the governing authorities of the defendant may take such action thereafter as will carry into effect their will and desire.

Judgment carrying this decision into effect to be submitted.

### The Karpark Corporation.

Proposal to the City of Graham, N. C.

The Karpark Corporation, a Delaware Corporation with an office for the transaction of business located at 2453 Gilbert Avenue, Cincinnati 6, Ohio, hereinafter called "the Company," hereby submits to the City of ——— hereinafter called "the City" its proposal for furnishing 173 one hour PPN Karpark Automatic Parking Meters manufactured by or for the Karpark Corporation.

1. Price.

The Company will furnish to the City meters, standards, collars, and accessories, when ordered, f. o. b. Cincinnati at the following prices:

2. Multiple Coin Meter, one hour Model KS-PPN......71.50

2. Extra Material Furnished for Service.

1. One coin carrying case for each thirty meters purchased.

2. One extra coin box for each meter.

3. Three mechanisms and one housing for each one hundred meters purchased.

4. Sufficient spare parts for one year.

5. Company engineer to supervise installation and train city servicemen.

3. Installation: The city shall have the option of

(a) Installing the meters at its own cost and expense by using City Employees and City Equipment or

(b) Requesting the Company to install the meters.

If the City shall install the meters, then the cost of such installation shall be deducted by the City out of the first proceeds from the operation of meters before any distribution is made pursuant to Paragraph 5 hereof.

If the Company shall install the meters the cost for such installation shall be Four Dollars ($4.00) per meter and shall be paid by the City to the Company pursuant to Paragraph Five (5).

The Company will furnish without cost to the City a competent supervisor during the installation of said meters to train the City employees in the proper method of installing and servicing the meters. If the Company is obliged to install the meters it shall have the right to sublet such installation to a reliable local contractor.

4. City Maintenance and Meter Service.

The City will agree to maintain said meters in good operating condition whether installed by it or the Company until all parking meters installed under this contract shall have been fully paid for or until this contract shall have been terminated as provided herein.

5. Payment.

City to select one of the two payment plans offered.

(a) The Company shall be entitled Fifty (50) per cent (%) of the gross receipts, the first (1st) payment to begin on the first (1st) day of the month following the date of installation, and payments to be made on the first (1st) day of every month, thereafter until the meters are paid for in full or until the contract is otherwise terminated as herein provided.

The Company shall be reimbursed for the installation and freight charges from the first gross receipts before any division of funds is made.

Payment for the said meters by the City to the Company shall be solely out of the receipts, funds and revenues obtained from the operation of said meters, and there shall be no obligation on the part of the City to pay for the same from any other source.

The City will agree to maintain in a separate fund all receipts collected from the operation of said parking meters and to keep separate books of account thereof. The City will further agree to permit the Company, at all reasonable times, to have access to the said books and records for the purpose of checking and auditing the receipts from the operation of said meters until the full purchase price shall have been paid.

6. Shipment.

The Company agrees that it will make delivery within 45 days after receipt of formal order accompanied by full and final instructions, unless prevented from doing so by strikes, lockouts, riots, or inability to obtain any necessary part, or by restrictions or acts of the Federal Government, or, acts of God, or other causes beyond the control of the Company.

7. Specifications and Price List of Parts.

Attached hereto are complete mechanical specifications of the Karpark meters and a complete price list of meter parts.

8. Trial Period.

The Company agrees that it will furnish said parking meters for a trial period of eight months. The City shall have the right within Fifteen (15) days following the ex-

piration of the trial period to terminate the purchase contract. Notice by registered mail, postage prepaid, addressed to the Company at 2453 Gilbert Avenue, Cincinnati 6, Ohio, shall be sufficient notice of such election by the City. The Company will thereupon remove the meters at its own expense and will restore the sidewalks to a condition as good as then existed at the time of installation, and all obligations between the parties shall cease and determine, except that the City shall be obligated as hereinafter provided to remit to the Company its proportionate share of the receipts from the operation of said meters to the date of their removal.

9. Guarantee.

The Company warrants the meters against defective workmanship and material for Twelve (12) months from date of Installation.

The Company will agree, if awarded the contract, to supply parts for said parking meters which may prove defective, without cost, to the City, except as hereinafter provided, for a period of One (1) year from the date of installation.

The Company will agree to repair or replace such parts, except main springs, at the Company's place of business at 2453 Gilbert Avenue, Cincinnati 6, Ohio, transportation charges paid by the City. Such parts shall be put in good order and repair by the Company, and such parts or replacement shall be returned to the City, transportation charges prepaid.

It is expressly understood however, that the aforesaid shall not include repair or replacement of meter parts damaged through accident, malicious mischief, or acts of God, and the City expressly agrees to reimburse the Company for repair parts or replacement of meters so damaged, whether during the process of installation or during above mentioned one-year period. All costs of removal of damaged parts or damaged meters including labor costs, together with transportation charges to the Company's place of business, shall be paid for by the City.

10. Taxes.

The City will agree that in the event the Company is awarded the contract and is required to pay Municipal, County, State or other taxes on the parking meters covered thereby, or while the Company remains legal owner of the aforementioned meters, the Company shall have the right to increase the price to the City of said meters by the amount of such taxes.

11. Ordinance and Resolution Enforcement.

The City will agree to enact and will enforce in good faith all ordinances and resolutions relating to the installation and operation of said parking meters and those providing for the collection of a fee for parking opposite said meters installed in said City until all parking meters installed under this contract shall have been fully paid for or until this contract shall have been terminated as provided herein unless restrained by order of a court of competent jurisdiction.

12. Legal Counsel.

In the event that any suit, action or proceeding is brought against the City to prevent the installation and operation of the parking meters, then the Company shall have the option to furnish counsel of its own choosing to assist the City Attorney in the defenses of any such action, suit, or proceeding, at the Company's sole cost and expense.

13. Title.

The Company shall retain title to said meters until they are fully paid for, as hereinafter provided. The Company agrees that upon receipt of payment in full for all said meters it will promptly execute and deliver at its own expense, a bill of sale therefor and all other papers and documents required in the opinion of the City Attorney to convey such title to the City.

14. Repossession.

If the City shall fail to perform any of the conditions on its part to be fulfilled, the Company shall have the right to take immediate possession of all installed parking meters and enter upon any street, avenue or sidewalk where the said parking meters are located and do any and all things necessary to repossess the said parking meters. This right shall be in addition to and not in substitution for any other right

or rights at law or in equity to enforce performance by the City of any of the terms of this contract on its part to be performed. In the event, that the Company shall repossess the said parking meters; it shall not be accountable to the City for the disposition of said repossessed parking meters; and the City shall remit any balance to the Company of its proportionate share of the receipts from the operation of said meters to the date of their removal, and the Company shall be entitled to keep, without accounting to the City therefor, all monies paid to it on account of said parking meters, provided, however, that in the event of said repossession the Company shall restore all sidewalks upon which parking meters have been erected to a condition as good as then existed at the time of installation.

15. Expiration.

This proposal is made subject to acceptance by the City within Thirty (30) days from the date submitted.

16. Proposal Alterations.

No agent of the Company or official of the City shall have the power or authority to alter the terms and conditions of this agreement except its President, Vice-President, Secretary or Treasurer. No other representations or agreements, written or oral, express or implied, have been made by either party, and this contract comprises the entire agreement effecting this order.

Date Submitted Sept. 19, 1947. Submitted by A. C. Nicholes, Agent.

Agreement.

In Witness Whereof the parties have, in duplicate, hereto signed and sealed this agreement by the respective parties authorized to execute same, this 23rd day of September, 1947.

The Karpark Corpora-    City of
tion                    By R. L. Hill
By J. S. Woodhouse          Mayor
      Pres.             Attest Frances U. Bar-
Witness Clara Hicks          rett
                        City Clerk
Corporate Seal
                        City Seal

Original-City Copy

The Board of Commissioners of the Town of Graham met in a regular session on January 5th, 1948.

Present: Mayor Hill; Commissioners: Hardee, Bradshaw, Braxton and Okey.

Commissioner Bradshaw introduced and moved the adoption of the following ordinance:

Ordinance.

Be It Ordained, That the Traffic Ordinance of the Town of Graham be amended by adding a new part thereof, providing for a parking meter area and for the regulation of parking therein by the installation and maintenance of parking meters, providing also for the collection of a fee for the privilege of parking vehicles in the public highways thereof sufficient to cover the cost of installation, operation, control and use of parking spaces and parking meters described herein and involved in the checking up and regulation of the parking of vehicles in the parking meter zone or zones created hereby and cost of inspection and regulation thereof; requiring deposit of coins for the use of parking meters and parking meter space for limited periods; fixing the time limits for parking in certain streets; providing for loading zones and safety thereof; providing penalty for the violation thereof and prohibiting obstruction of the egress and ingress to property, to read as follows:

1. Definitions.

(a) Parking Meter. The words "parking meter" whenever used in this ordinance shall mean and include any mechanical device or meter not inconsistent with this ordinance placed or erected for the regulation of parking by authority of this ordinance.

(b) Parking Meter Space. The words "parking meter space" as used herein shall mean the space alongside the curb in which a vehicle shall be properly parked, which shall be indicated clearly by painted lines or otherwise, and adjacent to which a parking meter is installed within four feet of the front line of said space.

2. Parking Meter Zones. There is hereby established a parking meter zone the territory within the district or upon any of the streets hereinafter set forth in this section, namely:

North Main Street from its intersection with Harden Street to the Courthouse in

the Town of Graham; Harden Street from its intersection with North Main Street to its intersection with Maple Street; East Elm Street from the Courthouse to its intersection with Maple Street; around Courthouse Square except for an area reserved for the sheriff and his deputies' automobiles.

All frontages on the said squares, streets and avenues defining said zones to be included therein.

The above zone may be diminished or extended and enlarged, or other parking meter zones may be created.

3. Installation of Parking Meters. In said parking meter zones hereby created or hereafter created by ordinance of the Common Council, parking meters shall be installed within or near the curb line facing alongside of such spaces as may be designated by the Board of Commissioners and which spaces they deem advisable or necessary for the proper regulation of parking of vehicles,—said installation to be placed not more than two (2) feet from the curb nor more than four (4) feet from the front line of the parking space as indicated and which spaces shall be marked out as individual parking meter spaces for vehicles. Each of such meters shall be set to operate upon the deposit therein of one to five one-cent coins or a five-cent coin of the United States of America for the period of time prescribed as parking time limits in No. —— of this section. Each of such meters shall be so arranged so as to show or display a signal, which shall clearly indicate whether the time limit during which parking in that space is permitted has expired.

4. Operation of Parking Meters. Except in a period of emergency determined by an officer of a fire company or of the Police Department or except in compliance with the directions of a police officer or traffic control signal, when any vehicle shall be parked in a space regulated by a parking meter, between the hours of 8:00 A.M. and 6:00 P.M. on any day except Sundays and public holidays, the owner, operator or driver of such vehicle shall, upon entering said parking space, immediately deposit one to five one-cent coins or a five-cent coin of the United States of America,

in the parking meter regulating such space and placed in front or alongside thereof. The legal signal shall be white and fully cover the dial glass window. The illegal signal shall be red and fully cover the dial glass window.

5. Parking Time Limits. Any vehicle parking or standing in any designated parking space in a parking meter zone shall be parked within the lines marked on the street or curb and may occupy said space during the parking limit provided by the ordinances of the Town of Graham for the part of the street in which said parking space is located. Parking or standing a vehicle in a designated space in a parking meter zone shall be lawful for twelve (12) minutes upon deposit of a one-cent coin, for twenty-four (24) upon the deposit of two-one-cent coins, for thirty-six (36) minutes upon deposit of three one-cent coins, for forty-eight (48) minutes upon deposit of four-one-cent coins, or for sixty (60) minutes or less upon deposit of five-one cent coins or of a five-cent coin of the United States of America. Failure to deposit such proper coin shall constitute a violation of this ordinance. Upon the expiration of the legal parking time, it shall be the duty of the owner, or driver of the vehicle forthwith to remove the vehicle from the parking space, and it shall be unlawful for any person to cause, allow, permit, or suffer any such vehicle registered in his name to be parked or standing overtime, or remain therein beyond the parking time limit prescribed by this ordinance.

6. Presumption of Unlawful Parking. The fact that the timing device on any parking meter is not in operation shall be presumptive evidence as to a parked vehicle then found in the parking space regulated by such parking meter that the owner or driver failed to deposit, or to cause to be deposited, the required coin or coins in said meter and the mechanical indication by such meter of a "violation" shall be presumptive evidence of unlawful parking.

7. It shall be unlawful and an offense for any person to deposit or cause to be deposited in a parking meter, any coins for the purpose of extending the parking time beyond the total lawful parking period fixed

by the ordinance of the Town of Graham for the parking in the parking space alongside or next to which the parking meter is placed.

8. It shall be unlawful and an offense for any person to permit a vehicle registered in his name to remain or be placed in any parking space alongside of or next to which any parking meter is placed while said parking meter is displaying a signal showing that the time for which the privilege to park in such space has been granted has expired.

9. Vehicles shall at all times be parked wholly within the parking meter space as marked, and where the parking meters are placed in front of parking meter spaces, the radiator shall be as near as possible to the parking meter controlling said spaces, and where the parking meters are placed alongside of said parking meter spaces, the front fender or front wheel of said vehicle shall be as near as possible to the parking meter controlling said spaces, which spaces shall be kept clearly marked at all times, and it shall be unlawful to park vehicles in a way that the same shall not be wholly within the area designated by the lines for parking for such spaces.

10. The one-cent or five-cent coins required to be deposited as provided herein, are for the purpose of regulating parking and to cover part of the cost of such necessary regulation for the convenience and protection of the public.

11. No parking meter authorized shall be so installed or a parking space so established, that it will obstruct the convenient egress and ingress to any property abutting on any street.

12. Unlawful to tamper with the meter or to deposit anything other than coins therein. It shall be unlawful for any person to deface, injure, tamper with, wilfully break, destroy or impair the usefulness of, or to open without lawful authority, any parking meter installed in said meter zones. It shall be unlawful to deposit or cause to be deposited in any parking meter any slug, device or substitute for a one-cent coin or a five-cent coin of the United States of America.

13. The Board of Commissioners shall cause the containers placed in said parking meters for the purpose of receiving coins deposited, pursuant to the provisions hereof, to be sealed at the time the same are placed in said meters. The City Treasurer is authorized to assign or cause to be assigned a competent person or persons to make such collections. Collection shall be made by removing from the meters the sealed containers containing deposits and replacing said containers with empty sealed containers. The person or persons making such collection shall then promptly turn over said collected containers, with the seals unbroken, together with all contents thereof, to the City Treasurer, who shall break the seals on said containers and remove the moneys therefrom.

14. It is the opinion of this Board of Commissioners that the proper regulation of parking in the parking meter zones hereby established can best be accomplished by the use of parking meters as herein authorized.

15. Nothing in this ordinance shall be construed as prohibiting the Town of Graham from providing for bus stops, for taxicab stands and for other matters of similar nature, including the loading and unloading of trucks, vans or other commercial vehicles.

16. If any section, provision, or part thereof this ordinance shall be adjudged invalid or unconstitutional, such adjudication shall not affect the validity of the ordinance as a whole, or any sections, provisions or part thereof, not adjudged invalid or unconstitutional.

17. Any person, firm or corporation, who shall violate or permit, suffer or allow anyone under his, their or its direction or control to violate any provisions of this ordinance shall upon conviction, be punishable by a fine not exceeding five ($5.00) dollars for each offense. Any person, firm or corporation who shall aid, abet or assist in the violation of the provisions of this ordinance shall, upon conviction be punishable by a fine of not exceeding five ($5.00) dollars for each offense.

# # 135

Nothing contained herein, however, shall in any way repeal, amend or supplant specific penalties for other traffic regulations.

18. This ordinance shall take effect immediately.

Upon roll call the foregoing ordinance was unanimously adopted.