TOWN OF GRAHAM et al. v. KARPARK CORP.

No. 6363.

United States Court of Appeals Fourth Circuit.

Argued Jan. 9, 1952.

Decided Feb. 25, 1952.

William I. Ward, Jr., Statesville, N. C., and Forrest C. Hall, Graham, N. C. (Thomas C. Carter, Burlington, N. C., and Land,

Sowers & Avery, Statesville, N. C., on brief), for appellants.

Thomas D. Cooper, Burlington, N. C. (Cooper, Sanders & Holt, Burlington, N. C., and Clark, Robinson & Hellebush, Cincinnati, Ohio, on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is an appeal from a judgment upholding the validity of a contract relating to the installation and operation of parking meters and decreeing specific performance of the contract against the municipality which had entered into it. The plaintiff in the court below was the Karpack Corporation, which had furnished parking meters to the town of Graham, North Carolina, and had installed them upon the streets of that town in accordance with the terms of a contract which provided that they be paid for out of the funds collected from their operation. Defendants were the town and its mayor and commissioners, who after a change in administration had decided that they would not proceed further under the contract, contending that it was not binding upon them. The District Judge held the contract to be valid and binding and directed defendant to carry out its provisions as agreed upon.

Parking meters have come into use as a means of using the streets in the business sections of cities for the parking of automobiles, of preventing the abuse of the parking privilege and of relieving the congestion of traffic which would result from the abuse. The plan under which they are operated permits the use of the streets for parking purposes for a comparatively short period of time for a small charge which is paid by the deposit of a coin in a meter opposite the parking space. Parking for a longer period is forbidden unless an additional coin is deposited. The coin operated meters are used to measure the time of parking and the enforcement of municipal ordinances is relied upon to prevent parking beyond the time allowed. Although municipal ordinances directed to this use of parking meters were held invalid as not

authorized by the law of North Carolina[1] in M. H. Rhodes, Inc., v. City of Raleigh, 217 N.C. 627, 9 S.E.2d 389, 130 A.L.R. 311, the law in that respect has now been changed and parking meters and ordinances for regulating traffic in connection therewith have been expressly authorized by legislative action. General Statutes of North Carolina, 160–200, subsection 31, being chapter 564 of the Public Laws of North Carolina 1945, as amended by chapter 7 of Public Laws of North Carolina of 1947, provides:

"31. To provide for the regulation, diversion, and limitation of pedestrians and vehicular traffic upon public streets, highways, and sidewalks of the city and to regulate and limit vehicular parking on streets and highways in congested areas.

"In the regulation and limitation of vehicular traffic and parking in cities and towns the governing bodies may, in their discretion, enact ordinances providing for a system of parking meters designed to promote traffic regulation and requiring a reasonable deposit (not in excess of five cents per hour) from those who park vehicles for stipulated periods of time in certain areas in which the congestion of vehicular traffic is such that public convenience and safety demand such regulation. The proceeds derived from the use of such parking meters shall be used exclusively for the purpose of making such regulation effective and for the expenses incurred by the city or town in the regulation and limitation of vehicular parking, and traffic relating to such parking, on the streets and highways of said cities and towns. Nothing contained in chapter two, section twenty-nine, of the Public Laws of one thousand nine hundred and twenty-one, or in section sixty-one of chapter four hundred and seven of the Public Laws of one thousand nine hundred and thirty-seven shall be construed as in any way affecting the validity of these parking meters or the fees required in the use thereof.

"The governing authorities of all cities and towns of North Carolina shall have the power to own, establish, regulate, operate and control municipal parking lots for parking of motor vehicles within the corporate limits of cities and towns. Cities and towns are likewise hereby authorized, in their discretion, to make a charge for the use of such parking lots."

Pursuant to this statute, the town of Graham entered into a contract with plaintiff in September 1947 to install 173 parking meters on certain portions of streets in that town. In March following, 43 additional meters were purchased under the contract. The total contract price was $15,444 to be paid from the coins deposited in the meters, the agreement being that the coins should constitute a special fund, one-half of which should be paid over from time to time to plaintiff until the total amount due on account of the purchase of the meters should be paid. There was no obligation to pay for the meters except from this special fund. The town obligated itself, however, to enact and enforce parking ordinances requiring the deposit of coins for parking opposite the meters until they were paid for. Upon failure on the part of the town to comply with the conditions of the contract, plaintiff was authorized to take possession of the meters and remove them, but this was "in addition to and not in substitution for" other rights for the enforcement of the contract.

Early in 1948 the meters were installed and an ordinance was passed regulating parking opposite them as provided in the contract.[2] Payments made to plaintiff from coins deposited in the meters prior to July

---

1. Parking meter ordinances were upheld almost without exception in other states. State ex rel. Harkow v. McCarthy, 126 Fla. 433, 171 So. 314; Ex parte Duncan, 179 Okl. 355, 65 P.2d 1015; In re Opinion of the Justices, 297 Mass. 559, 8 N.E.2d 179; Harper v. City of Wichita Falls, Tex.Civ.App., 105 S.W.2d 743; Ex parte Harrison, 135 Tex.Cr.R. 611, 122 S.W.2d 314; Gilsey Bldgs., Inc., v.

Incorporated Village of Great Neck Plaza, 170 Misc. 945, 11 N.Y.S.2d 694; In re Opinion of House of Representatives, 62 R.I. 347, 5 A.2d 455; Webster County Court v. Roman, 121 W.Va. 381, 3 S.E.2d 631; Sherman v. City of Picher, 201 Okl. 229, 204 P.2d 535.

2. The ordinance, to use the language of the enacting clause. is one "providing for

1, 1949 amounted to approximately $5,000, a like amount being retained by the town pursuant to the provisions of the contract. In May 1949 new town officers were elected, who were unwilling to perform the contract. They proceeded to repeal the parking meter ordinance and notified plaintiff it could remove the meters, although the town owed a balance of $10,279.21 on them and had collected around $5,000 as its part of the meter fees up to that time. This action was, thereupon, instituted by plaintiff for specific enforcement of the contract and decree was entered by the court below directing that defendants comply with its provisions, continue the collection of parking fees and enforce in good faith the parking ordinance until the meters should be paid for.

■ The principal contention of defendants is that the contract sued on is invalid, or at all events not binding upon the successors in office of those who made it, because it amounts to a bargaining away of governmental powers of the municipality. We think it clear, however, that in executing the contract the municipality was engaged in the exercise of powers incidental to its proprietary or private character, not those governmental or legislative powers which are vested in it as an agency of the state. Under the statute which we have quoted, municipalities in North Carolina are authorized to engage in the business of providing parking space for automobiles, a matter of great importance to their citizens, either by the operation of parking lots or the installation of parking meters in the streets, with a charge for the occupation of the space in the streets opposite the meters.

A contract providing for the purchase of such parking meters and that they be paid for out of the coins which they collect is, manifestly, a reasonable exercise of the power thus conferred; and the enactment and enforcement of appropriate parking ordinances is a necessary incident of the operation of the meters. Such ordinances are properly viewed, therefore, not as the exercise of governmental powers by the municipality but as regulations in the exercise of the proprietary or business function in which it is authorized to engage in providing space for parking.

■ It is well settled that contracts relating to the exercise of the proprietary or business powers of a municipality such as contracts relating to water supply, street lighting, gas supply, flood prevention, sewerage and the like are valid and binding upon it and will be enforced, if reasonable, even though they extend beyond the term of office of those entering into them. See Plant Food Co. v. City of Charlotte, 214 N. C. 518, 199 S.E. 712, 713; Safety Insulated Wire & Cable Co. v. City of Baltimore, 4 Cir., 66 F. 140; Omaha Water Co. v. City of Omaha, 8 Cir., 147 F. 1, 12 L.R.A.,N.S., 736; 37 Am.Jur. 679; notes 70 A.L.R. 795 and 149 A.L.R. 339. The Supreme Court of North Carolina, whose decisions are binding upon us in this case, has laid down the applicable rule in Plant Food Co. v. City of Charlotte, supra, as follows:

"It is true as a rule that where governmental discretionary powers are involved a board can make no contract which would bind its successors in office with respect to the exercise of the discretion. * * *

a parking meter area and for the regulation of parking therein by the installation and maintenance of parking meters, providing also for the collection of a fee for the privilege of parking vehicles in the public highways thereof sufficient to cover the cost of installation, operation, control and use of parking spaces and parking meters described herein and involved in the checking up and regulation of the parking of vehicles m the parking meter zone or zones created hereby and cost of inspection and regulation thereof; requiring deposit of coins for the use of

parking meters and parking meter space for limited periods; fixing the time limits for parking in certain streets; providing for loading zones and safety thereof; providing penalty for the violation thereof and prohibiting obstruction of the egress and ingress to property". It sets aside certain zones on the streets of the town as parking zones, provides for the installation of parking meters in these zones, requires the deposit of a coin of one or five cents upon parking in the space in the street opposite the meters during certain hours of the day and lim-

"Where governmental powers of this kind are not involved or disadvantageously affected, the right to make contracts, otherwise unobjectionable to the law, is one of the most important incidents of municipal government. Lambeth v. [City of] Thomasville, 179 N.C. 452, 102 S.E. 775. In the administration of its proprietary affairs the commissioners or councilmen of the town may make reasonable contracts binding upon their successors running through a term of years.

"The line between powers classified as governmental and those classified as proprietary is none too sharply drawn, and is subject to a change of front as society advances and conceptions of the functions of government are modified under its insistent demands. And it may be said that with respect to the making of contracts the inhibition does not strictly apply where governmental discretion as to the performance of the particular act is no longer necessary.

"It is not to be supposed that because the general subject may belong to the field of governmental powers no detail of administration may be carried out by contract, or that such contract must be completed within the term of the contracting council. The true test is whether the contract itself deprives a governing body, or its successor, of a discretion which public policy demands should be left unimpaired. It is obvious that a too rigid adherence to the principle would leave the town council nursing a mere theory,—in the possession of an important governmental power without practical means for its exercise, and unable to take any important public work, since no concern would equip itself and undertake the project when the incoming administration, the product perhaps of political accident, might repudiate the contract at will during its performance.

"We think the principle is subject to a further relaxation. Many details in an enterprise undertaken originally under governmental power have been held to be subjects of valid contracts, binding upon the successors to the contracting body, on the principle that they have become matters of business power or business discretion. Thus, a contract to keep a street in repair, running for ten years, was not considered offensive to the rule, although the laying out of the street belongs generally to the governmental discretionary power. Barber Asphalt Paving Co. v. [City of] Louisville, 123 Ky. 687, 97 S.W. 31, 9 L.R.A., N.S., 154."

In Safety Insulated Wire & Cable Co. v. City of Baltimore, supra [4 Cir., 66 F. 143], this court speaking through Judge Simonton stated the rule applicable as follows: "Municipal corporations, confining the term to cities and towns, possess a double character,—the one governmental, legislative, or public; the other in a sense proprietary or private. In its governmental or public character, the corporation is made by the state one of its instruments, the local depositary of certain limited and prescribed political powers to be exercised for the public good on behalf of the state, and not for itself. These legislative or governmental powers they cannot cede away or control or embarrass by contract disabling them from performing their public duties. Western Saving Fund Soc. v. City of Philadelphia, 31 Pa. [175], 182. Such contracts necessarily are void ab initio. They are not within the scope of the powers of the corporation. But in its proprietary or private character the powers are conferred on the municipal corporation, not from considerations connected with the government of the state at large, but for the private advantage of the particular corporation as a distinct legal personality. As to such powers, and as to the property acquired thereunder and contracts made with reference thereto, the corporation is to be regarded quo ad hoc a private corporation."

In Omaha Water Co. v. City of Omaha, supra [8 Cir., 147 F. 5], the late Judge Walter H. Sanborn with his usual clarity stated the rule as follows: "A city has two classes of powers, the one legislative or governmental, by virtue of which it con-

its the time during which such space may be occupied upon the deposit of the coin. The penalty provided for violation of the ordinance is a fine of not exceeding five dollars.

trols its people as their sovereign, the other proprietary or business, by means of which it acts and contracts for the private advantage of the inhabitants of the city and of the city itself. In the exercise of powers which are strictly governmental or legislative the officers of a city are trustees for the public and they may make no grant or contract which will bind the municipality beyond the terms of their offices because they may not lawfully circumscribe the legislative powers of their successors. But in the exercise of the business powers of a city, the municipality and its officers are controlled by no such rule and they may lawfully exercise these powers in the same way and in their exercise the city will be governed by the same rules which control a private individual or a business corporation under like circumstances."

It is argued that, under the contract, the town limits its control over the streets in agreeing that portions thereof adjacent to the meters be used for parking purposes; but there is no more objection to this than to granting franchises for the building of street railways or the erection of telephone lines or the laying of pipe lines in the streets. See Asheville St. Ry. Co. v. City of Asheville, 109 N.C. 688, 14 S.E. 316; City of Owensboro v. Cumberland Telephone & Telegraph Co., 230 U.S. 58, 33 S.Ct. 988, 57 L.Ed. 1389; Boise Artesian Hot & Cold Water Co. Ltd. v. Boise City, 230 U.S. 84, 33 S.Ct. 997, 57 L.Ed. 1400.

It is argued, also, that the provisions of the contract for the enactment of ordinances is a bartering away of the police power of the city and void for that reason. The ordinances contemplated by the contract, however, are not traffic control ordinances in the ordinary sense at all, but mere parking regulations. If they had relation to parking space in a parking lot such as the town was authorized by statute to establish, no one, we think, would question the validity of the contract requiring their adoption; but it can make no difference that the parking spaces are in the streets, since the town is authorized to use space in the streets for this purpose. In a word, the contract relates not to the regulation of traffic but to the regulation of parking space owned and controlled by the town, and the ordinance is but the carrying out by the town of its agreement that a charge shall be made for parking in this space until the meters are paid for. That the performance of such a contract requires the exercise of the power to enact and enforce ordinances is no more objectionable than that the creation of a municipal debt requires the exercise of the taxing power;[3] and there is no more reason why the courts should refrain from directing the proper exercise of municipal power in the one case than in the other.

■ Contention is made also that the contract is void because not entered in the minutes of the proceedings of the town commissioners by the clerk at the time it was made. There is no question, however, but that the contract was in writing, was signed by the mayor and attested by the clerk and was authorized by resolution of the board of commissioners at a meeting regularly held. It appears, also, that the parking meters were delivered by plaintiff and were accepted by the town pursuant to the contract and that an ordinance was duly and regularly passed and recorded in the minutes to regulate parking opposite the meters as the contract provided. Under such circumstances, we think there is no merit in the contention.

■ The statutes of North Carolina require that a contract by a municipality involving as much as two hundred dollars be in writing, signed by the officer authorized to execute it and approved by the governing body. G.S. § 160–279. And to be valid it must be authorized by ordinance or resolution adopted by the board of commissioners. G.S. § 160–332. It is not made a condition of validity, however, that it be entered in the minutes of the board. The requirement of G.S. § 160–269 that a full and accurate journal of the proceedings be kept would seem to be merely directory and not a condition precedent to the validity of

3. See Maryland Casualty Co. v. Leland, 214 N.C. 235, 199 S.E. 7; Citizens' Savings & Loan Ass'n v. City of Topeka, 20 Wall. 655, 22 L.Ed. 455; McQuillin, Municipal Corporations, 2d ed., vol. 6, sec. 2729.

a contract regularly entered into by the municipality. See McQuillin, Municipal Corporations, 2d ed., vol. 2, sec. 647; Bank of United States v. Dandridge, 12 Wheat. 64, 69, 6 L.Ed. 552; Joseph v. Village of Downers Grove, 7 Cir., 104 F.2d 974; Moore v. City of Thomasville, 17 Ga.App. 285, 86 S.E. 641, 37 Am.Jur. 676. The mere failure of the clerk to properly record the resolution authorizing the contract would certainly not authorize the municipality to repudiate it. See McQuillin, Municipal Corporations, 2d ed., vol. 2, pp. 640, 642; Ramsey v. City of Kissimmee, 111 Fla. 387, 149 So. 553, 555; Bigelow v. Inhabitants of City of Perth Amboy, 25 N.J.L. 297, 301; German Ins. Co. v. Independent School Dist., 8 Cir., 80 F. 366. The minutes could be corrected to set forth the adoption of the resolution, State v. Baynes, 222 N.C. 425, 23 S.E.2d 344; Nantahala Power & Light Co. v. Clay County, 213 N.C. 698, 197 S.E. 603; note 3 A.L.R. 1308; and as it was stipulated at the pretrial hearing that the commissioners entered into the contract, the court would direct that the minutes be corrected, if this were deemed necessary for the protection of the rights of the parties under the contract. It is not necessary that we go into any of these questions, however, as we think that the town, having acted upon the contract and received benefits thereunder, is estopped to deny its validity, at least to the extent of its liability for the value of the property so received. Hitchcock v. Galveston, 96 U.S. 341, 351, 24 L.Ed. 659; Moore v. Mayor, etc., of City of New York, 73 N.Y. 238, 29 Am.Rep. 134; Marion Water Co. v. Marion, 121 Iowa 306, 96 N.W. 883; Ross v. City of Madison, 1 Ind. 281, 48 Am.Dec. 361; City of Logansport v. Dykeman, 116 Ind. 15, 19, 17 N.E. 587; Bridgford v. City of Tuscumbia, C.C., 16 F. 910, 911; Ramsey v. City of Kissimmee, 111 Fla. 387, 149 So. 553, 555; 37 Am.Jur. p. 677; notes 137 Am.St.Rep. 367 et seq., 7 Ann.Cas. 1046 and 98 A.L.R. 1254. As said by the Supreme Court of Florida in Ramsey v. City of Kissimmee, supra: "The rights of creditors or of third persons, dealing with a municipal corporation, cannot be prejudiced by the neglect of the city council or of the city commission to keep proper minutes to show its own proceedings. What the city council, or what the city commission, in fact did, may be shown by evidence aliunde the record kept by them, when the record is completely silent or imperfectly kept."

The defendants complain because the judgment of the court directs the enforcement of the ordinance which the town adopted in connection with the contract. It is true that the contract does not require the enforcement of this particular ordinance; but it does require the enforcement of appropriate ordinances and no specific objection is made to this ordinance and no valid reason is given why it should not be enforced. Defendants argue that the sole remedy of plaintiff was to retake possession of the meters; but, as heretofore pointed out, this was "in addition to and not in substitution for" other rights for the enforcement of the contract. The case is, therefore, distinguishable from Sherman v. City of Picher, 201 Okla. 229, 204 P.2d 535, upon which plaintiff relies. Specific performance of the contract is the appropriate remedy in view of the contract provision that payment for the meters shall be solely from the funds obtained from their operation. If, however, the town should prefer to pay damages rather than have the contract specifically enforced, it can avoid specific enforcement by paying the balance due under the contract, which would be the measure of damages for breach where plaintiff does not elect to retake possession of the meters.

There was no error and the judgment and decree appealed from will be affirmed.

Affirmed.